Eric KNOEDLER, Plaintiff,

v.

ROXBURY TOWNSHIP, Russell Diana, Gerald Smith, Richard Aiken, Edward Hill, Paul Vignola, Donald Roos, and Alex Lazorisak, Defendants.

Civ. No. 80–228.

United States District Court, D. New Jersey.

March 5, 1980.

Carl Beckwith, Englewood, N. J., for plaintiff.

James, Wyckoff, Vecchio & Thomas by Joseph Vecchio, Denville, N. J., Alex Lazorisak, Succasunna, N. J., for defendants.

## OPINION

SAROKIN, District Judge.

Plaintiff seeks declaratory and injunctive relief from the enforcement of Roxbury Township Ordinance 23–79, which prohibits the sale and offering for sale of drug paraphernalia. Jurisdiction is based upon 42 U.S.C. § 1983, 28 U.S.C. § 2201 and § 2202.

The plaintiff instituted the action by filing a verified complaint with an application for an order to show cause and temporary restraints. On January 29, 1980, the Court considered and granted the application for a temporary restraining order and two days later, delivered an oral opinion granting the

requested relief. Both parties waived submission of additional proof, and pursuant to Fed.R.Civ.P. 65(a)(2), the hearing on the preliminary injunction and the trial on the merits were consolidated. This opinion shall constitute the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Plaintiff, Eric Knoedler, owns Nature's Head, a business located at 1045 Route # 46 in Roxbury Township. All of the individual defendants have been dismissed from this action with plaintiff's consent. The remaining defendant is Roxbury Township, a municipal corporation duly founded and chartered under the laws of the State of New Jersey. Plaintiff alleges that Nature's Head sells merchandise identified in and prohibited by Ordinance 23–79, entitled "An Ordinance to Amend and Supplement Chapter 3 of the Revised General Ordinances of the Township of Roxbury (1978) Concerning Police Regulations" (Complaint ¶ III(4)) [1]. Said ordinance provides:

3–12.1 No person shall sell, or offer to sell any type of syringe, needle, eye dropper, spoon, pipe testing kit, weighing device, packaging device, bagging device, cutting device, diluent, or any other paraphernalia or appliance if he has reasonable cause to believe that the product sold or offered for sale, will be used in conjunction with any controlled dangerous substance as defined by N.J.S.A. 24:21–1 et seq. and in violation of any provisions of N.J.S.A. 24:21–1 et seq.

That ordinance further provides:

3–12.2 No person shall maintain any building, conveyance or premises if he has reasonable cause to believe that sales or offers to sell as proscribed in Section 1 hereof are taking place at such building, conveyance, or premises.

Plaintiff seeks to have the ordinance declared invalid and unconstitutional, *inter alia*, on the ground that it is impermissibly

---

1. The ordinance was approved by the Township on December 27, 1979, and was to become or did become effective on January 24, 1980. (Complaint ¶ IV(1)).

vague in violation of the Due Process Clause of the Fourteenth Amendment.[2]

■■■ Due process requires that a criminal ordinance inform those who are subject to it, what conduct on their part will render them liable to its penalties. *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). As the Supreme Court stated in *Grayned v. City of Rockford,* 408 U.S. 104, 108, 109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'

The Roxbury ordinance insufficiently warns the plaintiff of the contemplated conduct it proscribes. *Lanzetta, supra.*

Initially, the Court recognizes that many if not all of the items described in the ordinance have numerous legitimate uses. Therefore, the sale of such items could not be prohibited for all purposes. The ordinance provides that the sale of the proscribed items is prohibited only if the seller has reason to believe that such items will be used in conjunction with certain drugs enumerated in and in violation of any provisions of the New Jersey Controlled Dangerous Substances Act, N.J.Stat.Ann. § 24:21–1 *et seq.* (West Cum.Supp.1979–1980).

The question before this Court is whether or not such standard is sufficient to guide sellers of merchandise and those persons charged with the responsibility for enforcing the ordinance. There are criminal statutes which utilize expressions such as "reason to know", "reason to believe" and similar standards which require the actor, in such circumstances, to make a mental determination regarding the acts of someone else. *E. g.,* N.J.Stat.Ann. § 2A:170–25.12 (West 1971 & Cum.Supp.1979–1980) (sale of chemicals which release toxic vapors prohibited, if seller has reasonable cause to suspect they will be used for a specific purpose); 18 U.S.C. § 792 (crime to harbor or conceal any person, if reasonable grounds to believe or suspect he has committed certain offenses).

At oral argument the defendant urged a comparison between the ordinance before the Court and 18 U.S.C. § 922(d) which makes it unlawful "for any licensed import-

---

2. A preliminary question is whether various enactments of the state legislature in the field of narcotics regulation have pre-empted the field which is the subject matter of the ordinance. A review of the New Jersey legislation indicates that there are numerous statutes which have been enacted which relate to narcotics. *E. g.,* N.J.Stat.Ann. § 24:21–1 *et seq.* (West Cum.Supp.1979–1980) (New Jersey Controlled Dangerous Substances Act); N.J.Stat. Ann. § 2A:170–25 (West 1971) (prohibiting the unlicensed growing of marijuana); N.J.Stat. Ann. § 2A:170–77.3 (West 1973 & Cum.Supp. 1979–1980) (prohibiting the dispensing of hypo-

dermic syringes or needles without prescriptions). It does not appear that the state has pre-empted the field which is the subject matter of the ordinance.

Additionally, N.J.Const. art. 4, § 7, ¶ 11 dictates that powers granted by the legislature to municipalities are to be liberally construed in their favor: "[t]he powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."

er, licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any *person knowing or having reasonable cause to believe that such person* . . . *(3) is an unlawful user of or addicted to marijuana or any depressant or stimulant drug* (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); . . ." (emphasis added)

The Court is unable to find a case in which the constitutionality of this subsection of 18 U.S.C. § 922 has been questioned and its validity upheld.[3] However, 18 U.S.C. § 922(d)(3) and the challenged ordinance are distinguishable despite the fact that each requires a seller of merchandise to assess the drug-using intention of the purchaser. Firearms are inherently dangerous items sold by those specially licensed to engage in that activity. Such circumstances may mandate that a greater duty of inquiry should be imposed upon a seller of guns than should be imposed upon a seller of the type of merchandise prohibited by the Roxbury ordinance.

Moreover, the seller faced with the Roxbury ordinance has to do more than merely assess whether or not the purchaser is an unlawful user of drugs. He must also determine what the customer intends to do with the items of purchase. Certainly in a case where the purchaser announces his or her intention to utilize the paraphernalia purchased for an illegal purpose, the seller would be placed in no dilemma; however, the question arises as to what would create a reasonable belief in the mind of the seller in the absence of such an unlikely announcement by the purchaser. Does the purchaser's age, sex, mannerisms or dress afford to a seller reason to believe that the paraphernalia will be used for an illegal purpose? Or should the nature of the purchaser's companions or the items he or she carries be determinative? These questions indicate the difficulty that a merchant, as well as a law enforcement officer, would have, in the absence of an admission by the purchaser, in determining what gives rise to a reasonable belief that a purchaser intends to utilize the paraphernalia for an illegal purpose. An additional concern is whether it is proper to charge an owner of a department store, or any other store, with the responsibility for a sales clerk's determination as to whether the person purchasing an item, especially an innocuous one such as a weight scale or a spoon, intends to utilize it for some improper and illegal purpose.

■ Not only is the subjective standard imposed by the ordinance vague, but so is the enumeration of the items covered. The ordinance refers to "any other paraphernalia or appliance." Thus, a merchant might have difficulty not only in determining the purpose for which the merchandise was to be used, but in speculating as to which items come within the ordinance's coverage. While the language may have been intended as a catch-all in the event the itemization was not sufficient, it makes it difficult, if not impossible, for the targets of the ordinance to know what conduct falls within its purview.

3. In *Hetherton v. Sears Roebuck and Co.*, 445 F.Supp. 294 (D.Del.1978), *rev'd on other grounds and remanded*, 593 F.2d 526 (3d Cir. 1979), a district court construed another provision of the Gun Control Act of 1968 which contained the same "reasonable cause to believe" language present in 18 U.S.C. § 922(d)(3). 18 U.S.C. § 922(b)(2) provides that it is unlawful for a licensed dealer to sell a firearm or ammunition unless he has "reasonable cause to believe" that the purchaser would not be in violation of state law. The Court was faced with the issue of what constituted dealer compliance with the statute. The Court concluded that *dealer compliance with specific procedures contained in Treasury Department* regulations which require the identification of a firearms purchaser by inspection of his driver's license and his completion of a form were sufficient. The Court stated, "[h]ad Congress intended to impose on dealers some sort of undefined duty to investigate a purchaser's background or verify the truthfulness of his statements, above and beyond what is required in administrative regulations, there might be problems of vagueness or reasonable notice to dealers. A criminal statute must give a person of ordinary intelligence fair notice of the forbidden conduct. See, *e. g. United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 . . . ." 445 F.Supp. at 301 n. 18.

■ If the ordinance were written to prohibit the sale of *specified* paraphernalia where the *seller* intended it to be used in connection with controlled substances, the ordinance might survive judicial scrutiny. The seller's intent could be inferred, for example, from store displays suggesting the item's utility in conjunction with illegal drug usage. In contrast, the subject ordinance focuses upon a seller's subjective determination of a *purchaser's state of mind and intention* with regard to various identified and unidentified articles.[4]

Therefore, in striking the ordinance for vagueness the Court does not mean to indicate that there are no means by which this municipality or any other governmental entity might accomplish the goals of such legislation, but unfortunately this particular ordinance is not constitutionally suited to that purpose. The Court is mindful of problems occasioned by rampant drug use, but it cannot sustain an enactment obviously intended to combat that ill where due process is violated. The ordinance is aimed at a legitimate target—the sale of paraphernalia utilized in connection with illegal drugs, but its impact is too broad. It is a cannon where an arrow is more appropriate.

■ Finally, plaintiff claimed at oral argument that the ordinance was overbroad in violation of the First Amendment. The prohibition in the ordinance that "(n)o person shall . . . offer to sell" would prohibit advertisement of paraphernalia for any purpose, legitimate or not. "Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 765, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976). Consequently, even commercial speech is entitled to some First Amendment protection. However, it is not clear from the record whether plaintiff engages in advertising of the items enumerated in the ordinance. Since his conduct may not be constitutionally protected under the First Amendment, he does not have standing to challenge the ordinance on this ground.[5] *See Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

Plaintiff's motion is granted, without costs. Counsel for plaintiff should submit an appropriate form of judgment consented to as to form by opposing counsel.

So ordered.

---

4. Counsel for the municipality suggests that the statute properly should be construed as focusing upon the seller's intent. *See Morss v. Forbes*, 24 N.J. 341, 132 A.2d 1 (1957) and *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The words of the statute pointedly defeat this construction. In the absence of any clear guide as to the municipality's meaning in using the chosen language of the ordinance, it would be inappropriate for this Court to adopt defendant's construction. Where it is fairly possible to construe a statute so as to avoid the question of its constitutionality, a federal court should do so. *See Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 297, 76 L.Ed. 598 (1931). That appears impossible here. Consequently, for reasons expressed by Judge Garth in *D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir. 1978), this Court need not abstain from deciding this case.

5. The plaintiff does have standing to challenge the ordinance as unconstitutionally vague. A person may not challenge a statute on the ground that it would be unconstitutional if applied to third parties in hypothetical situations. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 154–155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979), citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and cases cited therein. This is not the situation in the instant case. Although the nature of the plaintiff's business is such that he may not confront as many difficulties resulting from the statute's vagueness as would another kind of merchant, he nonetheless faces some of the same problems.