**WORLD IMPORTS, INC., Roger Chu, Plaintiffs,**

v.

**WOODBRIDGE TOWNSHIP, Joseph Galassi, Joseph Demarino, Anthony O'Brien, Robert F. Gawroniak, Robert F. Molnar, Bernard J. Peterson, Phillip M. Cerria, Vincent J. Mondano, Richard J. Kuzniak, Frank Jacob, Martin Litinger, Defendants.**

Civ. A. No. 80–1414.

United States District Court,
D. New Jersey.

June 20, 1980.

Anne M. Nelson, Pellettieri, Rabstein & Altman, Trenton, N. J., for plaintiffs.

Alfred F. Russo, Figarotta & Russo, Woodbridge, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

This case is the latest in a series of cases challenging municipal ordinances designed to make unlawful the sale of so-called narcotics paraphernalia, usually in retail establishments known as "headshops".

On May 16, 1980, plaintiffs, World Imports, Inc. and its owner, Roger Chu, filed a complaint naming as defendants Woodbridge Township and its Mayor, the Di-

rector of Police, the Chief of Police, and the members of the Township Council. Injunctive and declaratory relief was sought with regard to Woodbridge Township Ordinance No. 80–20 regulating and controlling the possession and sale of drug paraphernalia. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343(3) and (4).

I declined to enter an order temporarily restraining enforcement of the ordinance and scheduled a hearing on plaintiffs' application for a preliminary injunction. The hearing was held on June 4, 1980. Pursuant to Rule 65(a)(2), and with the consent of the parties, I ordered that the trial of the action on the merits be advanced and consolidated with the hearing on the application for a preliminary injunction.

According to the verified complaint, Ordinance No. 80–20 was adopted by the Woodbridge Township Council on April 15, 1980, to become effective twenty (20) days thereafter, on May 8, 1980. In general, the ordinance defined drug paraphernalia, set forth factors which a court or other authority should consider in determining whether an object is drug paraphernalia; prohibited the use, or possession with intent to use, of drug paraphernalia to produce, store or ingest a controlled dangerous substance; prohibited the distribution or possession with intent to distribute or manufacture with intent to distribute, of drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to produce, store or ingest a controlled dangerous substance; and prohibited the placing in any publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement in whole or in part is to promote the sale of objects designed or intended for use as drug paraphernalia.

Plaintiff Chu filed an affidavit in support of his application. He stated that World Imports, Inc. is a retail establishment located in the Woodbridge Center Shopping Mall. It specializes in domestic and imported gifts. He further stated that in April 1980 the Woodbridge Township Police informed him that the Township had adopted

an anti-paraphernalia ordinance "which precluded the advertising, display and sale of paraphernalia items". He was directed to remove all advertising, displays and merchandise covered by the ordinance from the store under threat of enforcement, which he did. As a result, Chu estimates he will lose twenty-five per cent (25%) of his weekly volume of sales.

Chu asserted in his affidavit that he is not certain what is specifically covered by the ordinance. Interestingly, he stated that "Many of the items which are enumerated in the Ordinance like pipes, scales and rolling papers are sold to customers who use those items for purely legitimate purposes.", leaving the clear impression that other items enumerated in the ordinance are sold to customers who do not use those items for purely legitimate purposes.

At the hearing on plaintiffs' application for a preliminary injunction, plaintiffs called John Patrick Driscoll as a witness. Driscoll, until two years ago, had been a police officer in a private New Jersey college. During his training and thereafter he had taken courses concerning drugs and drug abuse, and while on the campus he occasionally dealt with students who were using drugs.

The purpose of his testimony was to establish that various items of equipment which would commonly be identified as drug paraphernalia also have innocent uses. He testified that a number of years ago he purchased a glass water pipe in a pharmacy in the Monmouth Mall, that he never used it in connection with drugs other than one experiment with a combination of brandy and tobacco, and that he has converted it into a lamp. He testified that a pewter box which he had purchased in a headshop in Ocean County was not used by him as a stash box for marijuana; rather, he bought it because his wife liked giraffes and there was a giraffe engraved on the box; the box was used to store coins. Finally, he identified an alligator clip which he purchased in an electrical supply store, and which he does not use to puff marijuana roaches; he uses it to make an electrical connection on his stereo.

On cross-examination, Driscoll was shown a number of items, the like of many of which Driscoll had seen in the special area of the World Imports store where articles commonly known as drug paraphernalia were sold. As to a number of these items, he conceded that they might be used to smoke marijuana, ingest cocaine or to enhance the effect of drugs, and he would not have been surprised to learn that similar items were sold at World Imports. These items included a simulated rifle cartridge which, when pulled apart, disclosed an alligator clip, known as a roach clip; a small hashish pipe; a replica of a rifle cartridge which, when pulled apart, was found to contain a projectile with a curved bowl at the end—a coke spoon used for the ingestion of cocaine—a bong and various other devices for smoking and enhancing the effect of marijuana.

Since Driscoll's law-enforcement days had terminated two years ago, he was not aware of some of the new delights which are currently available. He was unfamiliar with an object which looked like a frisbee, had a hole and a screen in the middle and was called a buzzbee. Later testimony disclosed that it is intended to be thrown like a frisbee and then used by the catcher to obtain an enhanced puff of marijuana smoke through the honeycomb screen before throwing it to another participant to catch and take his puff through the honeycomb screen.

Neither was Driscoll able to identify an object that looked like a small bomb, and labeled the Power Hitter. He read the instructions which went with the object, which stated: 1) Insert joint in metal joint-holder; 2) Light joint; 3) Screw cap on firmly; 4) Cover over hole and squeeze a puff of smoke into the mouth. Having read this, Driscoll was led to believe that the Power Hitter was designed to hold marijuana.

It was Driscoll's opinion that these kinds of objects do not promote the use of drugs, observing that most of the items similarly used which he had encountered in his law-enforcement days were homemade.

The defendants called three witnesses. Detective Richard Alexander of the Woodbridge Police Department had had many years' experience in drug-enforcement and drug-education work. He presently concentrates on the problem of drug use in the Township's junior and senior high schools.

He testified that he had confiscated nine of the items of drug paraphernalia shown to Driscoll during police investigations and arrests for drug offenses. None of the nine had been obtained from World Imports. He had been in the World Imports store on several occasions. The store maintained a back room in which similar items were sold.

After the enactment of the ordinance, Detective Alexander went to each establishment known to him to sell drug paraphernalia and gave each a copy of the ordinance and explained it to the owner. He stated that the only question any owner asked was the status of rolling papers.

It appears from his testimony that Detective Alexander's understanding of the ordinance is flawed, at best. It can be inferred that he is unclear as to the elements of the offenses defined by the ordinance and the relationship prescribed in the ordinance of the articles covered by the ordinance to the intent and knowledge of the manufacturers and distributors of these articles.

Ernest Soper, Chief of Security at the Woodbridge Center, described the increase in the quantities of drug paraphernalia sold by World Imports during the past three years. He described problems he has had at the Mall with teenagers taking drugs, sniffing nitrous oxide and smoking marijuana. He testified that after the adoption of the ordinance there had been a marked decline in drug arrests among teenagers. He attributed this to the unavailability of paraphernalia and the children going elsewhere to obtain such items.

Mrs. Gwen Fennelly, a participant in a parents' drug awareness program which, among other things, seeks to alert parents to the dangers of drug paraphernalia, testified that she went to World Imports in February 1980 and purchased a buzzbee. She asked the salesman how to use it and was given instructions. She further testified that on a later occasion she returned to the store and purchased a Power Hitter. Again she was instructed how to use it to enhance the properties of marijuana.

This case cannot be viewed in a social vacuum. Drug use is a substantial problem and a matter of legitimate community concern. Even marijuana, which not too long ago was accepted by conventional wisdom as a harmless, hangover-free substitute for alcohol, is sold in a much more potent form and is thought by many to have a serious potential for long-range, permanent physical and psychological damage, particularly among the young.

There is an increasing number of devices which are used for the purpose of ingesting and/or enhancing the effects of drugs known by the term paraphernalia.

A number of retail stores commonly called headshops specialize in selling drug paraphernalia. Only the naive or duplicitous would contend that sales of drug paraphernalia by headshops are intended primarily for such innocent purposes as making a lamp from a water pipe, fashioning an article of personal adornment from a coke spoon, or feeding wounded birds with syringes and eyedroppers. The purpose of a headshop is to capitalize upon, to perpetuate and to augment the current interest, particularly among the young, in items which are obviously intended for use with illegal drugs.

The community has a legitimate interest in preventing or limiting the illegal use of drugs. The question in this case is whether in enacting Ordinance 80–20 Woodbridge has sought to achieve these legitimate ends in a constitutionally permissible manner. In *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D.N.J.1979), I had occasion to consider the validity of an ordinance which prohibited the advertising, display and sale of narcotics paraphernalia. Narcotics paraphernalia was defined as devices "designed for or customarily used in the preparation, testing, weighing, measuring or use or consumption of marijuana, cocaine, opium, hashish, et cetera".

Narcotics paraphernalia included, but without limitation, any syringe, needle, eyedropper, spoon, bong or other pipe, testing kit, roach clip, rolling paper, et cetera. The ordinance in that case included a prohibition against advertising or displaying narcotics paraphernalia to minors.

I concluded that the Lawrence Township ordinance was unconstitutional by reason of vagueness and overbreadth, and that it impinged on plaintiffs' First Amendment rights of free speech.

Narcotics paraphernalia, as defined in that ordinance, included many items which had completely innocent as well as drug-related uses, and there was nothing in the ordinance, such as a requirement of intent or knowledge of illegal use, which would enable one to distinguish between an innocent and noninnocent use, thus leaving it up to the prosecuting authorities to decide who to prosecute and who to leave alone.

Similarly, there was no limiting language in the provision restricting advertising. Thus, the ordinance could have been applied to speech and writings clearly protected by the First Amendment.

The Woodbridge ordinance, which is the subject of the present suit, is very different from the Lawrence Township ordinance which I held to be invalid in the *Record Museum* case. The Woodbridge ordinance is based upon the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice. It is carefully drafted and, in my opinion, defines with precision what is meant by drug paraphernalia and the conduct which is proscribed.

A virtually identical ordinance was the subject of a lengthy opinion by United States District Court Judge John M. Manos, *Record Revolution No. 6, Incorporated v. City of Parma, Ohio*, Docket No. C–80–38 (N.D.Ohio, April 14, 1980). With the exception of certain provisions, Judge Manos sustained the ordinance over objections which parallel those of the plaintiffs in the present case. I am informed that the Court of Appeals for the Sixth Circuit has stayed the judgment in that case, but I have con-

cluded that its reasoning is sound, and that except to the extent which I shall note below I should reach the same result. *Cf., Flipside, etc. v. Village of Hoffman Estates*, 485 F.Supp. 400 (N.D.Ill.1980).

Plaintiffs contend that Woodbridge Ordinance 80–20 is void for vagueness and overbreadth. Applying the principles set forth in a recent Third Circuit case on the subject, I conclude otherwise. *Aiello v. The City of Wilmington*, 623 F.2d 845, (3d Cir. 1980); compare *Sawyer v. Sandstrom*, 615 F.2d 311 (5th Cir. 1980).

Unlike the ordinances in the earlier head-shop cases, this ordinance does not include every spoon, pipe, rolling paper within the class of objects defined as drug paraphernalia.

An element of actual use or intent is injected: ". . . equipment . . . used, intended for use or designed for use . . ." in the illegal drug activities. To aid in identifying drug paraphernalia, the ordinance sets forth a list of items which are commonly used with this requisite intent.

Further, the ordinance lists indicia to aid a court or other authority in determining whether an object is drug paraphernalia.

Persons of common intelligence should be able to ascertain whether under all the circumstances an object is or is not drug paraphernalia under Ordinance 80–20. In his opinion, Judge Manos concluded that the eleventh indicium of drug paraphernalia was void for vagueness and should be severed from the rest of the ordinance. That indicium was "Whether the owner or anyone in control of the object is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products".

I shall discuss that point when I deal with plaintiffs' objection to these indicia in their entirety.

Nor do I find that the three sections of the ordinance which define the conduct which is prohibited to be either vague or overbroad. Section 2 makes it unlawful to

use or to possess with intent to use, drug paraphernalia to do various things with respect to a controlled dangerous substance. That seems clear enough.

■ Section 3 makes it unlawful for any person to distribute or dispense, or possess with intent to distribute or dispense, or manufacture with intent to distribute or dispense drug paraphernalia knowing, or under circumstances where one reasonably will know, that it will be used to do various things with respect to a controlled dangerous substance.

Judge Manos concluded that the "reasonably should have known" standard was unconstitutionally vague and that it must be severed from the section, holding that the balance of the section met constitutional standards.

A similar conclusion as to the "reasonably should have known" standard was reached by New Jersey District Court Judge Sarokin in *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980).

With some trepidation I reach a different conclusion from that arrived at by Judge Manos and by Judge Sarokin. It is my opinion that a "reasonably should have known" standard is not sufficiently different from an actual knowledge standard to require that it be held void for vagueness.

Unless a defendant admits that he knew something, his knowledge can only be established by evidence upon the basis of which the trier of facts could conclude that he must have known.

Even if someone testifies that he told a defendant something, the defendant's knowledge may be inferred only if the trier of facts concludes that the defendant heard, understood, and believe what he was told.

Exactly the same evidence must be employed to establish that a defendant reasonably should have known something. I do not believe that the "reasonably should have known" basis for conviction must be severed in order to have a valid ordinance. It is susceptible of proof in substantially the same way as actual knowledge.

■ Similarly, § 4 of the ordinance appears to me to be sufficiently precise to withstand a challenge for vagueness and overbreadth. It prohibits placing in any publication any advertisement, knowing, or under the circumstances where one reasonably should know, that the purpose of the advertisement in whole or in part is to promote the sale of objects designed or intended for use as drug paraphernalia.

The free speech implication of this section will be discussed subsequently, but the terms of the provisions do not seem vague. The fact that Detective Alexander's interpretation of the ordinance seems flawed, that if his interpretation were correct the ordinance might present constitutional problems, and that if he in fact ordered World Imports to remove all advertising, displays and merchandise which were supposed to be covered by the ordinance, he was exceeding his authority under the ordinance, would not require invalidation of the ordinance. Other remedies would be available to attend to that kind of conduct, if it were unlawful.

■ Plaintiffs contend that the ordinance is not rationally related to any legitimate state purpose and that regulating the accoutrements of drug abuse cannot rationally be found to have a bearing upon the prevention of drug abuse itself.

I certainly cannot say that there is no rational basis for the conclusion of Woodbridge Township that preventing the sale and use of drug paraphernalia will help prevent unlawful use of drugs. Defendants cite in their brief a number of respectable authorities who view the sale and distribution of drug paraphernalia as a significant factor in increased drug abuse, particularly among the young and the susceptible. This view has received judicial recognition, *Flipside, Etc. v. Village of Hoffman Estates, supra,* at 409, 410.

The classification of this case is rationally related to a legitimate governmental interest and should be sustained. *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

Plaintiffs assert that § 4 of the ordinance, relating to advertising, violates the plaintiffs' and the public's rights under the First Amendment of the United States Constitution. Section 4 prohibits placing an advertisement in a newspaper, handbill or other publication, a purpose of the advertisement being to promote the sale of products which the person placing the advertisement designed or intended for use with illegal drugs, and the person placing the advertisement knowing of such purpose at the time he placed the advertisement, or placing it under such circumstances he should have known of such purpose.

I reviewed in my opinion in the *Record Museum* case the First Amendment protections to which commercial speech or communication is entitled. The subject as it relates to the instant ordinance has been dealt with extensively in Judge Manos' opinion. The kind of speech contemplated in § 4 goes beyond protected commercial speech. It prohibits advertisements which tout illegal products and activities and which, therefore, are not entitled to First Amendment protection. *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973).

Next, plaintiffs contend that the portion of the ordinance which enumerates various considerations and the evidential factors which may be considered by the Court and other authorities in determining whether an object is drug paraphernalia is pre-empted by the New Jersey Constitution and the New Jersey Evidence Act. This is a state law question and should be left to the state courts to decide.

If any particular criteria raise constitutional questions, state court treatment of the criteria might obviate the need to adjudicate the constitutional claims. These are issues as to which the Court should abstain under the principles announced in *Railroad Commission v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and applied in *D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir. 1979).

Finally, plaintiffs contend that Ordinance 80–20 violates the commerce clause of the United States Constitution in that it imposes a heavy burden on the flow of commerce for illusory public purposes.

I find the ordinance serves the legitimate public purpose of attempting to limit the illegal use of drugs; its effect on commerce is only incidental—the curtailment of sales of a product designed or intended for illegal purposes. The legitimate purpose of this ordinance justifies its impact in interstate commerce. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

The foregoing will constitute my findings of fact and conclusions of law, and since, with the consent of the parties, this hearing has been consolidated with the trial of the action, a judgment will be entered denying the relief requested by the plaintiffs and for defendants on the merits.