**NEW ENGLAND ACCESSORIES TRADE ASSOCIATION, INC. et al., Plaintiffs,**

v.

**Donald A. BROWNE et al., Defendants.**

**Civ. No. B–80–424.**

United States District Court,
D. Connecticut.

Dec. 2, 1980.

Emanuel Margolis, David M. Cohen, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., James M. Smith, Denver, Colo., for plaintiffs.

Raymond B. Rubens, Bridgeport, Conn., for Joseph A. Walsh.

Cornelius F. Tuohy, Asst. Atty. Gen., Carl R. Ajello, Atty. Gen., Hartford, Conn., for Donald J. Long.

Ernest J. Diette, Jr., Asst. State's Atty., Wallingford, Conn., for defendants.

John M. Looney, Jr., Robert M. Langer, Asst. Attys. Gen., State of Connecticut, Hartford, Conn., for Mary M. Nestrand, Commissioner of the Dept. of Consumer Protection.

Nora Engel, South Norwalk, Conn., for Joseph W. Berenstein.

## MEMORANDUM OF DECISION

EGINTON, District Judge.

This is an action for declaratory and injunctive relief, in which plaintiffs challenge the constitutionality of a recently enacted Connecticut statute, Public Act No. 80–224, regulating the use and distribution of "drug paraphernalia." Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343(b), 2201, and 2202.

■ On September 29, 1980, two days before the Act was to become effective, the Court held a hearing on plaintiffs' motion for a temporary restraining order. The Court granted the motion, enjoining defendants from enforcing the statute pending a hearing on plaintiffs' motion for a preliminary injunction. On October 8, 1980, a hearing was held. By agreement of the parties the Court ordered that trial of the action on the merits be advanced and consolidated with the hearing on the preliminary injunction, pursuant to Fed.R.Civ.P. 65(a)(2). At the hearing, the state defendants agreed not to commence enforcement of the statute pending a final determination on the merits. In accordance with a schedule established by the Court, defendants submitted their posttrial brief on October 17, 1980 and plaintiffs filed theirs on October 24, 1980. The matter is now ripe for decision and the following constitutes this Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).[1]

I

## BACKGROUND

Plaintiffs in this action are a trade association and manufacturers, distributors, and retailers of various gifts and novelty items, euphemistically referred to as smoking accessories. Defendants are the Chief State's Attorney, the State's Attorney in each county in which a Connecticut plaintiff is located, the Connecticut Commissioner of Public Safety, the Connecticut Commissioner of Consumer Protection, and the Chief of Police in each community in which a Connecticut plaintiff is located.

---

1. This is not an appropriate case for abstention. *See High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). The affidavits filed by plaintiffs in support of their motion for a temporary restraining order plainly demonstrate "a genuine threat of enforcement of a disputed state criminal statute" sufficient to establish a case or controversy justifying intervention by a federal court. This fact alone distinguishes the instant case from *St. Martin's Press, Inc. v. Carey*, 605 F.2d 41 (2d Cir. 1979), in which the Second Circuit majority, over Judge Timber's vigorous dissent, found a case or controversy lacking where the plaintiff had failed to demonstrate the requisite threat of immediate prosecution.

Public Act 80–224 was passed by the Connecticut General Assembly on April 16, 1980 and signed into law by Governor Grasso on May 14, 1980. As noted, it was to have become effective October 1, 1980. *See* Conn. Gen. Stat. § 2–32. The Act amends various sections of Connecticut's Uniform Controlled Substances Act, Conn. Gen. Stat. §§ 19–443 *et seq.*, and provides as follows:

Section 1. (a) "Drug paraphernalia" refers to equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing or concealing, or injecting, ingesting, inhaling or otherwise introducing into the human body, any controlled substance contrary to the provisions of this chapter including, but not limited to: (1) kits intended for use or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived; (2) kits used, intended for use or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances; (3) isomerization devices used, intended for use in increasing the potency of any species of plant which is a controlled substance; (4) testing equipment used, intended for use or designed for use in identifying or analyzing the strength, effectiveness or purity of controlled substances; (5) dilutents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose used, intended for use or designed for use in cutting controlled substances; (6) separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana; (7) capsules and other containers used, intended for use or designed for use in packaging small quantities of controlled substances; (8) containers and other objects used, intended for use or designed for use in storing or concealing controlled substances; (9) hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injecting controlled substances into the human body; (10) objects used, intended for use or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as: metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with screens, permanent screens, hashish heads or punctured metal bowls; water pipes; carburetion tubes and devices; smoking and carburetion masks; roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand; miniature cocaine spoons, and cocaine vials; chamber pipes; carburetor pipes; electric pipes; air–driven pipes; chillums; bongs or ice pipes or chillers.

Section 2. In determining whether any object or material listed in section 1 of this act shall deemed "drug paraphernalia", a court or other authority shall, in addition to all other logically relevant factors, consider the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) The proximity of the object to any controlled substances;

(3) The existence of any residue of controlled substances on the object;

(4) Direct evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this act;

(5) Instructions, oral or written, provided with the object concerning its use with a controlled substance;

(6) Descriptive materials accompanying the object which explain or depict its use with a controlled substance;

(7) National and local advertising concerning its use;

(8) The manner in which the object is displayed for sale;

(9) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(10) Direct evidence of the ratio of sales of the object to the total sales of the business enterprise;

(11) The existence and scope of legitimate uses for the object in the community;

(12) Expert testimony concerning its use.

Section 3. (a) No person shall use or possess with intent to use drug paraphernalia, as defined in ... section 1 of this act, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance.... Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor.

(b) No person shall deliver, possess with intent to deliver or manufacture with intent to deliver drug paraphernalia knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor.

Section 4. The commissioner of consumer protection may receive, take into custody or destroy any drug paraphernalia as defined ... in section 1 of this act. Said commissioner shall keep a full and complete record of all drug paraphernalia received and disposed of, showing the exact kinds, quantities and forms of such drug paraphernalia, the persons from whom received, by whose authority received, and destroyed, and the dates of the receipt, or destruction. Drug paraphernalia held by law enforcement agencies or court officials as evidence in criminal proceedings, or drug paraphernalia seized or held as contraband shall be destroyed upon order of the court by the seizing authority or delivered to the commissioner of consumer protection as soon as possible upon termination of the proceedings or resolution of the case.

Section 5. If any section, part, clause or phrase in sections 1 to 5, inclusive, of this act, is for any reason held to be invalid or unconstitutional, sections, parts, clauses and phrases in said sections not held to be invalid or unconstitutional shall not be affected and shall remain in full force and effect.

The Act is patterned after, though more restrictive in scope than, the Model Drug Paraphernalia Act ["Model Act"]. The Model Act was drafted by the Drug Enforcement Administration of the United States Department of Justice and was promulgated in August, 1979 at the behest of state authorities to enable them to "cope" with the proliferation of drug paraphernalia.

Plaintiffs attack the constitutionality of Public Act 80–224 on several grounds. They contend: (1) that the Act is unconstitutionally vague and overbroad under the due process clause of the Fourteenth Amendment because it does not provide fair warning of the conduct that is prohibited, and does not establish any guidelines to prevent discriminatory enforcement; (2) that the Act offends due process since it is not rationally related to any legitimate governmental objective; (3) that the Act places an impermissible burden on interstate commerce; and (4) that the forfeiture provision of the Act (section 4) authorizes the deprivation of property without due process of law because it provides for forfeiture without prior judicial determination.[2]

---

**2.** Plaintiffs' complaint recites a litany of additional constitutional infirmities; however, none of these were raised or briefed in subsequent submissions. These contentions have been

Although the Model Act was promulgated only slightly more than one year ago, many states and localities other than Connecticut have adopted it. Moreover, in that same short time, there have been, to this Court's knowledge, eight district court decisions construing ordinances or statutes patterned after the Model Act; not one has found the Model Act to be unconstitutional.

Five courts have upheld the Model Act in its entirety. *Mid–Atlantic Accessories Trade Association v. Maryland*, 500 F.Supp. 834 (D.Md. 1980); *Tobacco Accessories v. Treen*, 501 F.Supp. 168, (E.D.La. 1980); *Florida Businessmen for Free Enterprise v. City of Hollywood*, No. 80–6157–Civ–NCR (S.D.Fla. Aug. 29, 1980); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J.1980). Three other courts also found the Model Act to be constitutional after excising certain portions of the statute pursuant to a severability clause. *Florida Businessmen for Free Enterprise v. Florida*, 499 F.Supp. 346 (N.D.Fla. 1980); *Casbah, Inc. v. Thone*, No. 80–0271 (D.Neb. Sept. 26, 1980); *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.Supp. 1157 (N.D.Ohio 1980).[3] To date, no circuit court has ruled on the constitutionality of the Model Act.[4] Against this backdrop, the Court now examines the particular arguments advanced by plaintiffs.

## II

## VAGUENESS AND OVERBREADTH

■ Plaintiffs' principal contention is that Public Act 80–224 is unconstitutionally vague. In *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33

L.Ed.2d 222 (1972), the Supreme Court stated:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." (Footnotes omitted).

Simply stated, a law must provide (1) notice of what is prohibited, and (2) guidelines for enforcement. *Mid–Atlantic Accessories Trade Association v. Maryland, supra*, at 844.

■ Plaintiffs' first objection is that the definition of drug paraphernalia in section 1 of the statute is unconstitutionally vague because virtually anything can be classified as drug paraphernalia. The statute plainly

---

raised and adequately considered in similar actions *see, e. g.*, cases cited, *infra*, at p. 1250, and the Court concludes that each is without merit.

3. In addition to the cases cited, there are numerous decisions construing the constitutionality of drug paraphernalia statutes not based on the Model Act. *See Mid–Atlantic Accessories Trade Association v. Maryland, supra*, at 842 (cases cited therein).

4. In *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980), the court invalidated an ordinance which prohibited possession and sale of "drug–related devices." However, in a footnote, the court stated, in dicta, that the Model Act, as contrasted with the invalidated ordinance, is a "properly drawn ordinance." *Id.* at 28 n.4.

avoids such a result by hinging the definition of drug paraphernalia on the word "intent." Section 1 defines "drug paraphernalia" as "equipment, products and materials of any kind which are used, intended for use or designed for use in . . . introducing into the human body, any controlled substance."

Moreover, the substantive offenses of use, sale, and manufacture set forth in section 3 of the statute also require a showing of specific intent as an element of the offense. It is this inclusion of specific intent that is crucial; "it permits the law to identify 'innocent' objects as paraphernalia when they are used with a controlled substance and at the same time exculpates otherwise 'suspicious' items which are in fact used for innocent purposes." *Casbah, Inc. v. Thone, supra,* slip op. at 8. (Footnote omitted).[5]

■ Despite this, plaintiffs argue that the element of specific intent is negated by the statute's failure to indicate whose intent is relevant, and by the inclusion of the phrase "designed for use." *See Indiana Chapter, NORMAL, Inc. v. Sendak,* No. TH 75–142–C (S.D.Ind. Feb. 4, 1980) (three–judge panel). Plaintiffs posit a number of hypotheticals whereby, they argue, a remote manufacturer, seller, or user would run afoul of the proscriptions of the statute based solely on the intent of one of the others. Such an interpretation amounts to a misreading of the statute. The more sensible interpretation and the one that has been applied by each of the courts that have considered the issue in the context of the Model Act (*see* cases cited p. 1250, *supra*) is that the relevant intent is that of the person charged with violating the statute.

■ Similarly, with respect to the phrase "designed for use", this Court again agrees with those same courts that the phrase, viewed in the context of the entire statute, refers not to the physical characteristics of an object but to the subjective intent of the person controlling it.

The fact that "designed *for use*" and "intended for use" are used in the disjunctive throughout the Act does not necessarily indicate that each of the two phrases means something entirely different. Rather, it is apparent from a reading of the Act in its entirety that all three verbs (i. e. used, designed and intended) were included in the definition of drug paraphernalia *so that the terms* would be applicable to all the kinds of conduct barred in the Act's substantive sections. A seller will "intend" an item for use, while a manufacturer is more likely to "design" an item for use, and a user will simply "use" the item. *Mid–Atlantic Accessories Trade Association v. Maryland, supra,* at 845.

■ Plaintiffs next attack section 2 of the Act, which sets forth twelve specific factors that must be considered in determining whether an object is drug paraphernalia. They argue that these enforcement guidelines are vague, and thus may lead to discriminatory enforcement. On the contrary, it is this Court's belief that these factors will provide law enforcement officials with a valuable guide in determining what items are prohibited by the statute. In this regard, it is significant that the factors listed *must* be considered in identifying drug paraphernalia. Moreover, it is important to keep in mind that under this statute there are no objects which are *per se* drug paraphernalia. Accordingly, the

---

5. The Comments to the Model Act clearly support this interpretation. The drafters stated as follows:

> To insure that innocently possessed objects are not classified as drug paraphernalia, Article I makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither "good" nor "bad," neither "lawful" nor "unlawful." Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control and the people subjected to prosecution. Article I requires, therefore, that an object be used, intended for use, or designed for use in connection with illicit drugs before it can be controlled as drug paraphernalia. Model Drug Paraphernalia Act, Comments at pp. 6-7.

court finds that the factors enumerated in section 2 are not unconstitutionally vague. In so finding, the Court is aware that its colleagues in other jurisdictions have divided on the constitutionality of one particular factor, which in the Connecticut Act bears number 9 and provides as follows:

> In determining whether any object or material listed in section 1 of this act shall be deemed "drug paraphernalia", a court or other authority shall, in addition to all other logically relevant factors, consider the following:
>
> * * * * * *
>
> (9) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products.

Two federal judges (Manos in Ohio and Robinson in Nebraska) have found the "legitimate supplier" test to be constitutionally defective. As Judge Manos succinctly stated in *Record Revolution No. 6, Inc. v. City of Parma, supra,* "[t]his portion of the [statute] fails the second test of vagueness; the reference to 'legitimate' suppliers creates a danger of arbitrary and discriminatory enforcement." *Id.* at 1171. *Accord Casbah, Inc. v. Thone, supra,* slip op. at 10–11.

However, four federal judges have found no difficulty in ruling the "legitimate supplier" provision facially constitutional. *Mid–Atlantic Accessories Trade Association v. Maryland, supra; Florida Businessmen for Free Enterprise v. City of Hollywood, supra; Delaware Accessories Trade Association v. Gebelein, supra;* and *World Imports, Inc. v. Woodbridge Township, supra.* This Court finds most persuasive the reasoning of Judge Harvey in Maryland and of Judge Debevoise in New Jersey. As Judge Harvey noted, no single factor is dispositive. The criteria are to be considered by the reviewing authority along with other relevant factors as guides to determine

whether the necessary criminal intent exists. That the factors may be relevant evidence of intent in no way negates the clear requirement of the statute for proof of *specific* intent before a violation can be found. Judge Harvey then provided several examples of how a reviewing authority might consider evidence relevant to the "legitimate supplier" criterion. This Court concurs completely with Judge Debevoise of New Jersey, who noted that state court treatment of this or any other of the factors might well obviate the need for constitutional adjudication. At this juncture, the Court finds the factors facially constitutional.

█ Plaintiffs' final vagueness argument concerns the standard of knowledge set forth in section 3(b) of the statute. Section 3 details the various offenses under the statute and 3(b) provides in relevant part that "[n]o person shall deliver, possess with intent to deliver or manufacture with intent to deliver drug paraphernalia knowing, or *under circumstances where one reasonably should know,* that it will be used to . . . introduce into the human body, any controlled substance." (Emphasis added). Plaintiffs contend that the constructive knowledge standard is at odds with the specific intent requirement of the statute. This Court agrees. Under the *reasonably should know* standard, a conviction can be obtained without establishing that a defendant specifically intended to violate the statute. It is inconsistent to say on the one hand that specific intent saves the statute from vagueness, but then permits a person to be convicted on a vague negligence standard. This Court concludes that the reasonably should know standard vitiates the specific intent requirement of the statute. Accordingly, it follows that the standard of constructive knowledge set forth in this statute is unconstitutionally vague and must be severed, pursuant to section 5.[6]

---

**6.** Perhaps the best description of the problems inherent in the reasonably should know standard is contained in Judge Sarokin's opinion in *Knoedler v. Roxbury Township,* 485 F.Supp.

990 (D.N.J.1980), a non–Model Act drug paraphernalia case.

> [T]he seller faced with the Roxbury Ordinance has to . . . determine what the customer intends to do with the items of purchase.

In so holding, the Court is aware that a majority of the courts reviewing the Model Act have upheld the reasonably should know standard. *Mid–Atlantic Accessories Trade Association v. Maryland, supra; Florida Businessmen for Free Enterprise v. Florida, supra; Florida Businessmen for Free Enterprise v. City of Hollywood, supra; Delaware Accessories Trade Association v. Gebelein, supra; World Imports, Inc. v. Woodbridge Township, supra.* Only two prior decisions have struck down the standard, and required that it be severed from the statute. *Casbah, Inc. v. Thone, supra; Record Revolution No. 6, Inc. v. City of Parma, supra. See also Knoedler v. Roxbury Township,* 485 F.Supp. 990 (D.N.J. 1980).

The rationale stated by those courts that have upheld the constructive knowledge standard is essentially that the reasonably should know standard, as applied, "is not sufficiently different from an actual knowledge standard to require that it be held void for vagueness." *World Imports, Inc. v. Woodbridge Township, supra,* at 433; *Florida Businessmen for Free Enterprise v. City of Hollywood, supra,* slip op. at 6. This argument misses the mark. The question is not whether the two standards are susceptible to similar proof; the question is whether a conviction may be based on anything less than specific intent to commit the proscribed acts. This Court finds that it may not.[7]

Requiring the state to prove beyond a reasonable doubt that a prohibited act

was done "knowingly" minimizes the danger that a person will be convicted for an innocent act. An act is done knowingly if it is done voluntarily and intentionally, and not because of mistake or accident or innocent reason. The knowledge of the use to which an object will be put may be difficult for the state to prove beyond a reasonable doubt. Nevertheless, it is precisely this rigorous requirement which saves the statute from vagueness. *Casbah, Inc. v. Thone, supra,* slip op. at 14. (Citations omitted).

Closely related to plaintiffs' claim of vagueness is their contention that the statute is overbroad. An "overbroad" statute is one that "does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within in its ambit other activities that in ordinary circumstances constitute an exercise of [protected activity]." *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). Plaintiffs contend that those subject to the statute will not be able to determine what it prohibits and thus will be deterred from exercising their First Amendment guarantees of free expression. This is nothing more than a restatement of the vagueness arguments previously discussed. "Reasonable people can readily tell whether their conduct will be violative of the law because it is their own state of mind that is ultimately determinative. When read and interpreted in a reasonable manner, the Act bans no conduct protected by the First Amendment, whether con-

---

Certainly in a case where the purchaser announces his or her intention to utilize the paraphernalia purchased for an illegal purpose, the seller would be placed in no dilemma; however, the question arises as to what would create a reasonable belief in the mind of the seller in the absence of such an unlikely announcement by the purchaser. Does the purchaser's age, sex, mannerisms or dress afford to a seller reason to believe that the paraphernalia will be used for an illegal purpose? Or should the nature of the purchaser's companions or the items he or she carries be determinative? These questions indicate the difficulty that a merchant, as well as a law enforcement officer, would have, in the absence of an admission of the purchaser, in

determining what gives rise to a reasonable belief that a purchaser intends to utilize the paraphernalia for an illegal purpose. An additional concern is whether it is proper to charge an owner of a department store, or any other store, with the responsibility for a sales clerk's determination as to whether the person purchasing an item, especially an innocuous one such as a weight scale or a spoon, intends to utilize it for some improper and illegal purpose. *Id.* at 993.

7. As Judge Manos properly noted in *Record Revolution No. 6, Inc. v. City of Parma, supra,* "this holding does not restrict the introduction of relevant evidence from which the trier of fact can determine knowledge." *Id.* at 1174.

sidered to be symbolic speech, commercial speech or ordinary speech." *Mid–Atlantic Accessories Trade Association v. Maryland, supra,* at 847.

## III

## DUE PROCESS

 Plaintiffs allege that the statute violates substantive due process in its effort to effectuate the state's legitimate interest in regulating the use of controlled substances. See Plaintiffs' Supplemental Memorandum In Support of Declaratory Judgment and Preliminary Injunction, October 24, 1980 at 4 (hereinafter Plaintiffs' Supplemental Memo). Substantive due process scrutiny of a law involves a balancing of a myriad of interests, including the character of the right allegedly infringed, the extent of infringement, the importance of the government interest at issue, and the government's consideration of less burdensome alternative means to accomplish the same goal. Where no fundamental right is involved, the inquiry under substantive due process parallels a traditional equal protection analysis, which requires only that the statute in question be rationally related to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). The majority of challenges to statutes based on the Model Act have been analyzed by the courts under the equal protection rubric which, for purposes of this action, requires the identical inquiry as a substantive due process claim.

 Plaintiffs here allege that because it is not clear that paraphernalia legislation in any way furthers the regulation of controlled substances, the nexus between the statutory prohibitions and the articulated legislative purpose is too tenuous to sustain the law. Plaintiffs misconceive the standard for evaluating the statute's constitutionality. The legislation need not necessarily further the state scheme to any particular degree, nor must the law address all facets of a problem. *Mid–Atlantic Accessories Trade Association v. Maryland, supra,* at 848, *citing Erznoznik v. City of Jackson-*

*ville,* 422 U.S. 205, 215, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125 (1975). So long as the law bears a rational relationship to the evil the state properly seeks to eliminate, it is not this Court's function to substitute its judgment for that of the legislature. The legislature has carefully considered the drug abuse problem along with a multitude of possible solutions and has enacted a drug paraphernalia law. It may indeed be premature to assess the actual success of these statutes in curbing the drug problem. Nevertheless, despite the tentative results, the law appears to be a plausible approach to a legitimate state goal, which is all that this Court need determine. Because this Court can not say that the law fails to meet the minimum requirement of a rational relationship, it finds the statute constitutional under the substantive due process and equal protection clauses.

 Plaintiffs also claim that the statute directly and adversely affects "head shops", while other "legitimate" establishments which distribute and sell identical or functionally equivalent merchandise remain undisturbed. This objection is patently inconsistent with the statutory language, which facially applies to all who "use, intend to use or design for use" such drug paraphernalia with the proscribed intent. Furthermore, even if head shops were to suffer a disproportionately detrimental impact by enforcement compared to other similar enterprises, not every classification violates equal protection. As the Supreme Court held in *New Orleans v. Dukes, supra,* at 303, 96 S.Ct. at 2516, "Rational distinctions may be made with substantially less than mathematical exactitude" when the state exercises its police power. A classification that neither thwarts fundamental personal rights nor draws upon inherently suspect distinctions such as race, religion, sex or alienage is permissible, provided it reflects a reasonable relationship to a legitimate state interest. It is only when a statute impinges upon an interest deserving due process protection or involves a suspect classification that the court applies a strict scrutiny test. Here, no such scrutiny is warranted. Having already found the requisite rational relationship, this Court de-

fers to the legislature's choice of statutory scheme regardless of any real or illusory burden it may impose on this particular group of plaintiffs. *New Orleans v. Dukes, supra,* at 303, 96 S.Ct. at 2516.

## IV

## COMMERCE CLAUSE

■ Plaintiffs contend that the statute will impose a substantial burden on interstate commerce in violation of the Commerce Clause of the United States Constitution; Article I, Section 8, Clause 3. They argue that "by making the delivery of such merchandise (paraphernalia) a criminal act, the statute will effectively preclude the shipping, transportation, distribution, sale and marketing of plaintiffs' merchandise across state lines." Plaintiffs' Supplemental Memo at 5–6. Plaintiffs recognize the fallacy in their interpretation by conceding that "the sale of such items could not be prohibited for *all* purposes." (emphasis added.) The statute does not prohibit all sale and delivery. As the court found in *Delaware Accessories Trade Association v. Gebelein, supra,* at pg. 296, Sec. VI, "[t]ransportation of the wide variety of items that could come within the definition of 'drug paraphernalia' is not proscribed absolutely; the Act regulates only those items that are connected with an illegal intent. As such, the Act has a narrow impact, and will not significantly affect interstate commerce."

To reach that conclusion, the court applied the three part test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970): (1) whether the legislation serves a legitimate local public interest; (2) whether the legislation has only an incidental effect on interstate commerce; and (3) whether the local public interest justifies the statute's impact on interstate commerce. With respect to the first criteria, it is irrefutable that legislation designed to mitigate drug abuse serves the public interest. To that end, the Supreme Court has found that a state may enact legislation intended to curtail illicit drug use as an exercise of its power to protect the health and welfare of the citizens. *Robinson v. California,* 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962). Numerous courts have recently held that properly drawn legislation may also prohibit the sale and use of drug related devices. *See* cases citéd, *infra,* at 1250. This Court agrees and so finds that Public Act 80–224 serves a legitimate local public interest.

The second criteria relates to the effect on interstate commerce. Any burden which the statute imposes on interstate commerce is incidental since the statute, properly applied, prohibits only the sale and delivery of items designed and intended for illegal purposes. Contrary to plaintiffs' assertions (Plaintiffs' Supplemental Memo at 7), the statute does not impose an absolute ban on the sale, marketing and distribution of the products manufactured, wholesaled and retailed by the plaintiffs. Rather, by prescribing merely the use, intent to use and design for use, the legislature has limited the scope of the statute so as to minimize any adverse effect on interstate commerce. See *Record Revolution No. 6, Inc. v. City of Parma, supra,* at 1181.

■ Most regulation will have an impact on the free flow of commerce. Such is not the inquiry under the commerce clause. The courts should not interfere with state efforts to regulate important local matters so long as the burden is not unreasonable. This determination involves a balancing of the burden against the local interest benefitted—the third tier of the commerce clause inquiry. Given the magnitude of the drug problem and the substantial state interest in enacting viable solutions, the burden on commerce must be very great to tip the scale against the statute. Plaintiffs have not demonstrated a burden sufficient to outweigh the legitimate state goals. Absent proof of an undue burden, and in deference to the legislative attempt to resolve a serious problem, this Court finds the statute valid under the commerce clause.

## V

## CIVIL FORFEITURE

■ Plaintiffs also challenge the statutory provision authorizing civil forfeiture.

Section 4 of the statute provides for civil seizure and forfeiture of drug paraphernalia. Plaintiffs construe the statute to empower the Commissioner of Consumer Protection to take into custody and destroy any item deemed to be drug paraphernalia without a warrant or a prior hearing. They argue that this authority contravenes the Fourth Amendment protection against unreasonable searches and seizures and the Fourteenth and Fifth Amendment due process clauses. Plaintiffs' Memorandum in Support of Declaratory Judgment and Preliminary Injunction, October 7, 1980 at 7 (hereinafter Plaintiffs' Memorandum). The Commissioner of Consumer Protection submits that her authority is limited to receipt and custody of paraphernalia seized by others. *See* Memorandum of Defendant Commissioner of Consumer Protection in Opposition to Plaintiffs' Memorandum in Support of Declaratory Judgment and Preliminary Injunction, October 15, 1980 at 2.

Every court faced with this challenge has sustained the forfeiture provision based on the dispositive authority of *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In that case, the Supreme Court upheld the seizure and forfeiture of a yacht which had been carrying a controlled substance, despite the absence of prior notice or a hearing. The Court stated that the case presented an "extraordinary" situation in which postponement of notice and hearing until after seizure did not deny due process. *Id.* at 680, 94 S.Ct. at 2090. Since the same exigencies arise during the seizure of illegal drug paraphernalia as during the search and seizure of controlled substances, this Court finds the civil forfeiture provision a constitutionally permissible method to seize and confiscate the unlawful objects which facilitate drug abuse.

Plaintiffs' Fourth Amendment objection is illusory, because the statute neither alters nor dilutes the probable cause finding necessary to validate a search and seizure. The same constitutionally compelled procedures that apply to any search must also be adhered to by the enforcers of this statute. These limits serve to refute plaintiffs' allegations that "[t]he Commissioner is granted complete discretion, not subject to judicial review, in determining the applicability of the definition of paraphernalia in section 1, and in seizing and destroying the property of Connecticut residents." Plaintiffs' Memorandum at 10. Since this Court has found that the state may punish the use, sale or manufacture of drug paraphernalia as a crime on a showing of specific intent, there is then no infirmity in enacting a provision authorizing seizure and forfeiture of the fruits of the crime. Accordingly, section 4 of the statute also passes constitutional muster.

## VI

### CONCLUSION

For the reasons set forth above, this Court finds Public Act 80–224 constitutional as construed herein.

It is So Ordered.