**DELAWARE ACCESSORIES TRADE ASSOCIATION, an unincorporated association; and Robert Croft and Larry M. Fenza, trading as Wonderland Records; Double Diamond Enterprises, Inc., a Delaware Corporation doing business as Village Records; Robert J. Brennan, trading as Highway Head Shop; and Robert C. Dicriscio, trading as Dealers Choice, Plaintiffs,**

v.

**Richard S. GEBELEIN, Esquire, Attorney General of the State of Delaware, Defendant.**

Civ. A. No. 80–285.

United States District Court,
D. Delaware.

Aug. 15, 1980.

Carl Schnee, David E. Brand and Susan C. DelPesco of Schnee & Castle, Wilmington, Del., for plaintiffs.

Charles M. Oberly, III, Asst. State Pros., Dept. of Justice, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

On June 3, 1980, the Delaware Legislature passed House Bill 673, entitled "An Act to Amend Chapter 47, Part IV, Title 16 of the Delaware Code Relating to the Uniform Controlled Substances Act; And Providing for Prohibitions Against the Possession, Manufacture or Delivery of Drug Paraphernalia" ("the Act"), relevant portions of which are reproduced in the Appendix to this Opinion. Three days later, plaintiffs, an association of vendors of "smoking accessory items" and several individual retail businesses dealing in such goods, filed this action seeking an injunction restraining enforcement of the Act and a Declaratory Judgment that the operative provisions of the Act, 16 Del.C. §§ 4769(a)(5), 4701(13), and 4771–75 (1980), are unconstitutional. The case is presently before the Court on plaintiffs' motion for a preliminary injunction.

Plaintiffs acknowledge that their inventories contain "drug paraphernalia" as defined by § 4701(13) of the Act and indicate a willingness to comply with the Act. They allege, however, that strict compliance with the Act is impossible because of the vagueness of a number of its sections and that the Act, therefore, violates the due process clause. Plaintiffs further allege that the confiscation sanction imposed by 16 Del.C. § 4769(a)(5) violates due process because the Act does not bear a rational relation to a legitimate state interest; that the Act violates the Equal Protection Clause of the Fourteenth Amendment by creating an impermissible classification distinguishing between "head shops" * and other businesses selling accessories; that the Act violates the right of privacy guaranteed by the First and Ninth Amendments; that the Act will have an adverse effect on Fourth Amendments rights; and that the Act violates the Commerce Clause of the United States Constitution by virtue of its effect on interstate commerce.

Plaintiffs have established neither that there is a reasonable probability that they will eventually succeed on the merits nor that they could be irreparably harmed if the status quo were not maintained. It follows that plaintiffs' application for *pendente lite* relief must be denied. *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917 (3d Cir. 1974).

Delaware's drug paraphernalia statute closely tracks the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice in August, 1979. The Model Act has been enacted by the state legislatures of Connecticut, Florida, Illinois, Indiana, Louisiana, Maryland, Nebraska, New Jersey, New York, and South Carolina, as well as by municipal governments in Florida, Ohio, New Jersey, and New York. As of this writing, challenges to its validity have been litigated to a conclusion in United States District Courts in Ohio and New Jersey. *Record Revolution No. 6, Inc. v. City of Parma, Ohio*, 492 F.Supp. 1157 (N.D. Ohio 1980) and *World Imports, Inc. v. Wood-*

---

* The term "head shop" apparently refers to a retail business that sells items useful in producing and injecting drugs that affect the user's head.

*bridge Township,* 493 F.Supp. 428 (D.N.J., 1980). Each of these cases upheld the constitutionality of the Act, although the *Parma* court found it necessary to delete certain portions in order to sanction its validity. The Act is currently in litigation in at least Florida, Maryland, Nebraska, and New York.

The Act sets up a two–step test for determination of criminal liability: first, the items in question must fall within the category of "drug paraphernalia" as defined by § 4701(13), and second, the individual must act in certain ways with respect to the items. The language of the Act poses questions concerning the constitutionality of both steps.

## I. VAGUENESS.

### A. *Definition Of Drug Paraphernalia.*

█ Section 4701(13) defines "drug paraphernalia" as "all equipment, products and materials of any kind which are used, intended for use, or designed for use" in producing or consuming controlled substances in violation of Delaware drug abuse laws. The first question raised by the plaintiffs concerns the interpretation of the phrases "used, intended for use, or designed for use". Plaintiffs claim that this language is susceptible to an interpretation such that a person could be found guilty of violating the Act if he sells an object that seems to him innocuous but nevertheless possesses physical characteristics that render it particularly suitable for drug usage, or that, though not drug related in physical characteristics, has been or is intended for illegal use by someone else, as, for example, the manufacturer or the buyer. I agree that the Act, as so construed, would pose serious constitutional problems under the due process principles articulated in cases like *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Under that construction, for example, sellers would be required to make guesses about the intentions of the absent manufacturer and the potential buyer of the seemingly innocuous item in order to determine whether it is in fact "drug paraphernalia".

Similarly, a person with no prior exposure to the world of illicit drugs would be legally responsible for appreciating the drug use potential of an item even though the purpose of the design is arcane or the item appears to be useful for perfectly legal purposes. It is my opinion that these problems are illusory. A fair reading of the Act as a whole indicates that a determination of whether an object is "drug paraphernalia" under the statute can only be made with reference to the use and the intent or design of the person alleged to have possessed, delivered, manufactured or advertised it in violation of the statute. When the Act is read with this crucial fact in mind, it becomes an adequate guide both for private citizens who seek to conform their conduct to the requirements of the law and for law enforcement officials who are charged with the task of applying it in the field.

Plaintiffs are mistaken when they argue that the word "designed" necessarily refers to the physical attributes of an object. Webster's Third New International Dictionary 611–12 (8th ed. 1971) defines "design", first, as "a mental project or scheme in which means to an end are laid down" and, second, as "a particular purpose . . . a planned intention". Not until the sixth out of seven definitions is the word defined in terms of structure: "the arrangement of elements that make up a work of art, a machine, or other man–made object." Thus, the word "design" does not lead in the first instance to an examination of the suitability of the physical features of an item for use with drugs but rather to whether someone plans or designs that it be used to violate drug laws.

The statute itself indicates that "designed for use" refers not to structure but to intent. In addition to the general definition referred to above, Section 4775 of the Act directs that in determining whether an object is or is not drug paraphernalia, one must consider all "logically relevant factors" including those listed in that section. The listed factors have no relationship to the shape, appearance or structure of an item; rather they relate to the *context* in

which an object is found at a given point in time and constitute what would normally be regarded in the law as circumstantial evidence of the intent or design of those dealing with the object at that time, e. g., the proximity of the object to controlled substances, the manner in which the object is displayed, how it is being promoted and the characteristics of the business enterprise offering the object for sale. Thus, the lists suggests that an object having one set of physical characteristics may be drug paraphernalia at one time and not at another depending upon what those dealing with it at a particular time have in their minds.

Having determined that "designed for use", as well as "intended for use" refer to someone's subjective intent at a particular time, the questions remain "whose intent?" and "at what point in time?" While the definition and relevant factors do not expressly address these questions,[1] the clear implication as to the latter question is the point in time when a violation is alleged to have occurred. This implication eliminates the possibility of a seller being convicted solely on the basis of the *mens rea* of a manufacturer or anyone else not present at the time of the alleged violation. Although it does not also eliminate plaintiffs' other spectre—a conviction based solely on the guilty intent of a buyer present in a "head shop"—there are several good reasons to believe that the legislature intended to define drug paraphernalia with sole reference to the state of mind of the one who engaged in the activity alleged to have violated the statute. The first is that the portions of the statute dealing with situations that might involve a buyer present at the time of the alleged offense—i. e. those portions prohibiting the sale of drug paraphernalia—independently make knowledge or constructive knowledge of the defendant with respect to the buyer's intended use an essential element of the crime. The fact that the buyer's state of mind is expressly addressed in the operative section of the statute sug-

gests to me that the references to intent in the definition section are directed in the context of a prosecution for sale, to the intent of the seller.

The second reason for reading the definition section as referring to the intent of the person alleged to have engaged in prohibited conduct is the traditional reluctance of courts to read criminal statutes as imposing liability in the absence of a guilty state of mind on the part of the defendant. This reluctance is demonstrated by a line of cases that have construed a closely analogous statutory scheme, § 18 of the National Prohibition Act, 41 Stat. 313, currently codified at 27 U.S.C. § 30. That section provides:

It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction or recipe advertised, designed, or intended to use in the unlawful manufacture of intoxicating liquor.

The cases construing this provision have consistently held that it is solely the intent of the seller that is relevant. In *United States v. Brunett*, 53 F.2d 219 (W.D.Mo. 1931), for example, the court held:

My view is that the words "designed" and "intended" must be construed to include a design and intention on the vendor's part that the preparation, compound, and substance sold by him will be used in the unlawful manufacture of intoxicating liquor. Such a construction is the one most favorable to one accused. It has never been the policy of the law to make an act innocent in itself criminal if the actor had *no wrongful purpose or intent.* It is scarcely to be thought that Congress proposed to make the mere sale of a preparation, compound, or substance a crime unless the seller had also an intention and design that what was sold by him should be used in the commission of a crime. Certainly Congress did not intend

---

1. What seems at first glance to be a deficiency is explained by the fact that under the statutory scheme these provisions provide a definition that must be appropriate in the context of a

number of different prohibited activities, i. e., manufacture, possession, delivery, and advertising.

that he should be guilty of an offense because the manufacturer, if he were other than the vendor, designed the preparation, compound, and substance for an ultimate unlawful use, or because the purchaser so intended to employ it.

53 F.2d at 230. *See also Stroh Pdcts. Co. v. Davis,* 8 F.2d 773 (D.C.E.D.Mich.1925); *Weinstein v. United States,* 293 F. 388 (1st Cir. 1923); *Jones v. United States,* 11 F.2d 98 (4th Cir. 1926); *United States v. Nomel Products Co.,* 47 F.2d 575 (2d Cir. 1931); *Israel v. United States,* 63 F.2d 345 (3d Cir. 1933); *Chapman v. United States,* 271 F.2d 593 (5th Cir. 1959) (interpreting 26 U.S.C. § 5686).

Finally, as earlier noted, Delaware's General Assembly adopted the DEA's Model Act almost verbatim. It is therefore logical to look to the comments in that Model Act for guidance regarding the legislative intent. Those comments point out in no uncertain terms that the relevant intent is that of the "people subjected to prosecution". It explains, for example:

> To insure that innocently possessed objects are not classified as drug paraphernalia, Article I [16 Del.C. § 4701(13)] makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither "good" nor "bad", neither "lawful" nor "unlawful". Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control, and the people subjected to prosecution. . . .

> Hinging the definition of drug paraphernalia on a specific intent to violate, or to facilitate a violation of, the drug laws also provides "fair warning" to persons in possession of property potentially subject to this Act. A statute is not unconstitutionally vague, if it embodies a specific intent to violate the law. [citations omitted].

In summary, "drug paraphernalia" is defined as any item that the person who engaged in the conduct alleged to have violated the Act used or intended or planned to be used to produce or consume a controlled substance in violation of the drug laws. People of ordinary intelligence may reasonably be expected to distinguish between merchandise, innocuous or otherwise, that they use in connection with illicit drugs or deal in with the intent of facilitating a drug violation, and all other merchandise. Accordingly, they can be expected to conform their conduct to the requirements of the Act.

Nor does the Act's definition of "drug paraphernalia" provide an inadequate guide for law enforcement. The Act poses no greater or more uncertain task for law enforcement personnel than any other statute that requires a judgment about a person's subjective intent based on all the relevant circumstantial evidence. Indeed, the Act goes further than most in attempting to promote uniformity of enforcement by providing a list of the kinds of circumstantial evidence that should be considered for this purpose.

### B. The "Reasonably Should Know" Standard.

The operative sections of the Act make it unlawful "to use or possess with intent to use, drug paraphernalia" to violate drug laws (§ 4771); "to deliver, possess with intent to deliver, or manufacture with the intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used" to violate drug laws (§ 4772); and "to place in a [printed publication] any advertisement, knowing or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia." (§ 4774).

Plaintiffs do not object to § 4771 on its face, except insofar as it incorporates the Section 4701(13) definitional apparatus. Plaintiffs do argue, however, that the inclusion of a constructive knowledge standard ("reasonably should know") in §§ 4772 and 4774 renders the Act unconstitutionally

vague by requiring a deliverer or advertiser to discern the intention of a third party. Although the District Court in *Parma, supra*, was persuaded by this argument and excised the constructive knowledge sections from the ordinance under consideration, I do not agree with the reasoning in that opinion. In the context of the Act, the constructive knowledge standard is not unduly vague and is not violative of the due process clause.

In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So—called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue.

While there may be room for debate about what some sets of circumstances would indicate to the reasonable observer, the case law demonstrates quite convincingly that a constructive knowledge standard is not impermissibly vague. There are a myriad of federal statutes[2] and numerous Delaware ones[3] that utilize a "reasonably should know" or similar standard. Two of the cases that have sanctioned these standards will suffice to make the point.

In *Selzman v. United States*, 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054 (1925), the Supreme Court upheld a constructive knowledge standard in the context of a section of the National Prohibition Act, Tit. II, § 4, 41 Stat. 305 (repealed) which forbade the sale of denatured alcohol for beverage purposes or under circumstances from which the seller might reasonably have inferred the intention of the purchaser to use it for such purpose. This statute provided for a conviction based solely upon what a defendant should have known regarding the intentions of a third party, even in the absence of any actual criminal intent on the part of the defendant, and, to this extent, posed a more difficult issue than that now before me. More recently, the Fifth Circuit in *United States v. Featherston*, 461 F.2d 1119 (5th Cir. 1972), *cert. denied*, 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972), upheld a federal statute that prohibits teaching or demonstrating the use of firearms or explosives,

> knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

Again, an otherwise legal activity is rendered illegal if performed in circumstances where one should know that the intent of a third party is to break the law as a result. In fact the statute not only holds an actor to the constructive knowledge that the

---

**2.** 8 U.S.C. § 1185(a)(2); 15 U.S.C. §§ 78dd–1, 78dd–2, 1397, 1916, 2068, 2614; 18 U.S.C. §§ 491, 922, 954, 1384, 2154, 2251, 2423, 2512; 26 U.S.C. § 999; 42 U.S.C. §§ 263j, 5409; 46 U.S.C. § 1461; 50 U.S.C. § 783.

**3.** 6 Del.C. § 7323; 11 Del.C. §§ 464, 627, 1336, 1905.

third party will employ the information in a civil disorder, but also that the civil disorder will be of a certain specified type, one that affects commerce or federally protected functions.

Although portions of the Act permit proof of "constructive knowledge" as a substitute for actual knowledge, this does not render the statute too imperfect a guide for conduct; nor does it mean that the Act provides inadequate guidance for law enforcement personnel. While it is true that the Act requires law enforcement officials to draw an inference in some situations as to what a reasonable man would believe based on all the surrounding circumstances, this is very similar to the process that law enforcement officials are necessarily required to go through in the course of enforcing almost all criminal statutes. As earlier noted, most criminal statutes require an intent to commit a crime as one of the elements of the offense and this element can only be determined by viewing all the surrounding circumstantial evidence and making a judgment thereon about the state of mind of a potential defendant. Accordingly, I fail to perceive how the "constructive knowledge" provision of the Act poses a greater risk of uneven law enforcement than most other criminal statutes.

## II. RATIONAL RELATIONSHIP TO A LEGITIMATE GOVERNMENTAL PURPOSE.

■ Although plaintiffs concede that the state may regulate drug use under the authority of its police power, they assert that the particular approach of the Act does not bear a legitimate and rational relationship to the ends sought and is therefore violative of due process. In essence it is plaintiffs' argument that the Act does not go far enough and should be stricken because there is little guarantee that it will stamp out drug use in the State of Delaware. This argument is without persuasive force in light of the well-established rule that "a legislature may deal with one part of a problem without addressing all of it." *Erz-*

noznik v. City of Jacksonville, 422 U.S. 205, 215, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125 (1975).

## III. EQUAL PROTECTION.

■ Plaintiffs argue that the Act is directly aimed at "head shops" and will therefore result in discriminatory enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The identical argument was raised in *Parma, supra,* and concisely disposed of by Judge Manos:

The plaintiff argues that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it is directed only at "head shops," and not the many other establishments in Parma which distribute, sell or advertise items which are identical or functionally equivalent to the merchandise sold by it. The court concludes that this argument is meritless for two reasons. First, the basic premise of the argument is false; the Ordinance applies to *all* users, distributors or advertisers of drug paraphernalia who act with the requisite intent, not just "head shops." Second, the Ordinance does not violate the equal protection clause because it is rationally related to a legitimate . . . [governmental] goal.

## IV. RIGHT TO PRIVACY.

■ Plaintiffs argue that:
prohibiting the sale, manufacture, advertisement, distribution, use, possession, and purchase of certain items on the basis of unusual design, packaging or marketing expression infringes upon the privacy interest of potential purchasers of certain items sold by plaintiffs.
Docket No. 14 at 34.

While I have some difficulty understanding the thrust of this argument in light of the Supreme Court's Opinion in the case upon which the plaintiffs principally rely,[4] my current view is that plaintiffs have no standing to challenge the Act on

4. *Stanley v. Georgia*, 394 U.S. 557, 568 n. 11, 89 S.Ct. 1243, 1249 n. 11, 22 L.Ed.2d 542 (1969).

the ground that it may violate the privacy rights of third party purchasers in circumstances not currently before the Court and that a victory for the plaintiffs on the merits of this argument is unlikely for that reason. *See, e. g., Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–2915, 37 L.Ed.2d 830 (1973).

## V. FOURTH AMENDMENT.

■ Plaintiffs fear that the Act will in some way enable police to make searches without the probable cause contemplated by the Fourth Amendment. Nothing in the Act, however, dilutes the Fourth Amendment probable cause standard and there is no reason to believe that its application will be any more difficult or uncertain in the context of the Act than in the context of any of the other multitude of statutes that proscribe otherwise innocent conduct when accompanied by the intent to commit or facilitate a crime.

## VI. COMMERCE CLAUSE.

■ Finally, plaintiffs challenge the Act on the ground that it will impermissibly interfere with interstate commerce. The relevant test to be applied was set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) as: (1) whether the legislation serves a legitimate local public interest; (2) whether the legislation has only an incidental effect on interstate commerce; and (3) if the first two tests are met, whether the burden on interstate commerce is clearly excessive in relation to the local benefits.

First, I have already found that drug regulation is a legitimate local public interest served by the Act. Second, I determine that the impact on interstate commerce is minimal. Transportation of the wide variety of items that could come within the definition of "drug paraphernalia" is not proscribed absolutely; the Act regulates only those items that are connected with an illegal intent. As such, the Act has a narrow impact, and will not significantly affect interstate commerce. Given the minimal effect on interstate commerce and the def-

erence properly paid to the plausible legislative assessment of the benefits to be derived from the Act through reduced drug usage, I am not prepared to hold that the Act conflicts with the commerce clause.

## VII. CONCLUSION.

For the above reasons, I assess plaintiffs' chances of success on the merits to be slight and plaintiffs' claim that they will be irreparably injured as a result of the Act's vagueness to be unpersuasive. Accordingly, plaintiffs' motion for a preliminary injunction will be denied.

## APPENDIX

Section 4701(13):

"Drug paraphernalia" shall mean all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re–packaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance the manufacture, delivery, possession or use of which is in violation of this chapter.

\*  \*  \*  \*  \*  \*

Section 4771. *Possession of Drug Paraphernalia*

It is unlawful for any person to use, to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, re–pack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the provisions of this chapter. Any person who violates the provisions of this section is guilty of a crime, and upon conviction shall be fined not more than one hundred dollars ($100), be imprisoned not more than two years, or suffer both fine and imprisonment.

## Section 4772. *Manufacture or Delivery of Drug Paraphernalia*

It is unlawful for any person to deliver, possess with the intent to deliver, or manufacture with the intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates the provisions of this section is guilty of a crime, and upon conviction shall be fined not less than two hundred dollars ($200) nor more than one thousand dollars ($1000); be imprisoned for not less than one year, nor more than five years; or suffer both fine and imprisonment.

\*     \*     \*     \*     \*     \*

## Section 4774. *Advertisement of Drug Paraphernalia*

It is unlawful for any person to place in a newspaper, magazine, handbill or other publication any advertisement, knowing or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia. Any person who violates the provisions of this section is guilty of a crime, and upon conviction may be fined not more than fifty dollars ($50); be imprisoned not more than one year; or suffer both fine and imprisonment.

## Section 4775. *Use of Objects; Logically–Relevant Factors*

In determining whether or not an object is drug paraphernalia, a Court or other authority shall consider, in addition to all other logically–relevant factors, the following:

(a) Statements by an owner or by anyone in control of the object, concerning its use;

(b) The proximity of the object, in time and space, to a direct violation of this chapter;

(c) The proximity of the object to controlled substances;

(d) The existence of any residue of a controlled substance on the object;

(e) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter:

(1) the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(g) Instructions (oral or written) provided with the object, concerning its use;

(h) Descriptive materials accompanying the object which explain or depict its use;

(i) National and local advertising concerning its use;

(j) The manner in which the object is displayed for sale;

(k) Whether or not the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(*l*) Direct or circumstantial evidence of the ratio of sales of the suspect object to the total sales of the business enterprise;

(m) The existence and scope of legitimate uses for the object in the community;

(n) Expert testimony concerning its use.