### NEW ENGLAND ACCESSORIES TRADE ASSOCIATION, et al., Plaintiffs,

v.

### James E. TIERNEY, in his capacity as Attorney General for the State of Maine, et al., Defendants.

Civ. 81-0360 P.

United States District Court, D. Maine.

Dec. 7, 1981.

Richard S. Emerson, Jr., Portland, Me., James M. Smith, Denver, Colo., for plaintiffs.

James W. Brannigan, Jr., Rufus E. Brown, Deputy Attys. Gen., William R. Stokes, Asst. Atty. Gen., Augusta, Me., Robert E. Miller, City Sol., Bangor, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

This civil rights action pursuant to 42 U.S.C. § 1983 involves a challenge to the constitutionality of the so-called Maine Drug Paraphernalia Act, 17–A M.R.S.A. § 1111–A, as originally enacted and subsequently amended.[1] Plaintiffs seek a declaratory judgment that the statute violates their constitutional rights, and an injunction restraining its enforcement. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and (4).

Plaintiffs are a trade association whose members sell and deliver goods which allegedly may be proscribed by the Maine statute, and two distributors and four retailers of such goods. Defendants are the Attorney General and the Commissioner of Public Safety of the State of Maine; the District Attorneys of Cumberland, Penobscot and Androscoggin Counties, Maine; and the Chiefs of Police of the Cities of Portland, Bangor and Lewiston, Maine.

Trial on the merits has been advanced and consolidated with the hearing of the application for preliminary relief pursuant to Fed.R.Civ.P. 65(a)(2). An evidentiary hearing has been held, and the issues have been comprehensively briefed and argued by counsel.[2] The following opinion contains the Court's findings of fact and conclusions of law as required by Fed.R. Civ.P. 52(a).[3]

I

*The Maine Drug Paraphernalia Act*

The Maine Drug Paraphernalia Act is patterned closely after the Model Drug Paraphernalia Act, which was drafted by the Drug Enforcement Administration of the United States Department of Justice to serve as a model for state and local legislation. The model act is controversial, and has been the subject of litigation throughout the country.[4]

---

1. The Maine legislature enacted "An Act to Prohibit the Sale and Use of Drug Paraphernalia," 17–A M.R.S.A. § 1111–A, on May 14, 1981, to become effective on September 18, 1981. P.L.1981, ch. 266. On September 16, 1981 plaintiffs filed a complaint accompanied by a motion for a temporary restraining order and a motion for preliminary injunction. Following a hearing on the motion for a temporary restraining order on September 17, 1981, the Court granted the motion and ordered that the defendants, their agents and servants be enjoined from enforcing the provisions of 17–A M.R.S.A. § 1111–A against plaintiffs until a hearing on the motion for preliminary injunction could be held or until further order of the Court.

On September 28, 1981, the Maine legislature amended the Act by deleting the language "designed for use" from all portions of the statute. This amendment became immediately effective. P.L.1981, ch. 531.

2. At the evidentiary hearing, defendants agreed not to commence enforcement of the statute pending a final determination on the merits.

3. At the evidentiary hearing, five witnesses testified—a distributor and a retailer for plaintiffs and three law enforcement officers for defendants. Plaintiffs' witnesses professed an inability to understand the statute's definition of drug paraphernalia. The officers identified objects, clearly within the definition of drug paraphernalia, which they had purchased from various "head shops" in Maine. Since the instant action attacks the facial constitutionality of the Maine statute, the Court attaches no weight to this testimony. As another court has observed, the statute "speaks for itself." *Record Revolution No. 6, Inc. v. City of Parma*, note 4 *post*, 638 F.2d at 929 n.15.

4. The cases which have upheld the entire model act or modified versions thereof include: *The Casbah, Inc. v. Thone*, 651 F.2d 551 (8th Cir. 1981); *Nova Records, Inc. v. Sendak*, 504 F.Supp. 938 (S.D.Ind.1980); *Tobacco Accessories & Novelty Craftsmen Merchants Ass'n v. Treen*, 501 F.Supp. 168 (E.D.La.1980); *Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F.Supp. 834 (D.Md.1980); *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J.1980); *New England Accessories Trade Ass'n v. City of Nashua*, No. 80–530–D (D.N.H. Dec. 8, 1980); *Florida Businessmen for Free Enterprise v. City of Hollywood*, No. 80–6157–Civ–HCR (S.D.Fla. Aug. 29, 1980). *See also Hejira Corp. v. J.D. MacFarlane*, 660 F.2d 1356 (10th Cir. 1981).

The present Maine Act, a copy of which is appended to this opinion, contains nine sections. The first three sections define "drug paraphernalia." Section 1 defines "drug paraphernalia" as "all equipment, products and materials of any kind which are used or intended for use" in connection with a scheduled drug.[5] This general definition is followed by a long list of examples of items, Section 1(A)–(K), which, when so used or intended for such use, may constitute drug paraphernalia. Section 2 of the statute specifically exempts from the definition of drug paraphernalia hypodermic apparatus. Section 3(A)–(N) sets forth 14 factors which "a court or other authority should consider, in addition to all other logical relevant factors," in "determining whether an object is drug paraphernalia."

Following the definition of "drug paraphernalia," the remaining six sections of the Act define the substantive criminal offenses and sanctions. Section 4 makes it unlawful for any person to "use, or to possess with intent to use," drug paraphernalia. Section 5 makes it unlawful for any person to "traffic in or furnish drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used" in connection with a scheduled drug. Section 6 makes it unlawful for any person to "place in any newspaper, magazine, handbill or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia." Sections 7 and 8 prescribe the civil and criminal penalties for violations of the statute. Section 9 empowers the State to confiscate as contraband any drug paraphernalia possessed in violation of the statute.

## II

Plaintiffs attack the constitutionality of the Maine statute on three principal grounds. They contend: (1) that the statute is impermissibly vague and overbroad, in violation of the Due Process Clause of the Fourteenth Amendment; (2) that Section 1(A)–(K) of the Act creates a mandatory presumption that the examples listed therein are drug paraphernalia, in violation of the Due Process Clause; (3) that Section 6 of the Act infringes their free speech rights, in violation of the First Amendment. Since the issues thus presented have been exhaustively discussed in the numerous cases considering the constitutionality of the model act, this Court's discussion will not be extended. Concurring with the reasoning of those cases which have upheld the act's constitutionality, the Court concludes that plaintiffs' constitutional challenges must be rejected.

### A.

*Vagueness and Overbreadth*

Plaintiffs' primary contention is that, on its face, the Maine statute is unconstitutionally vague and overbroad.

Other courts have upheld the model act after severing portions considered to be unconstitutional. *New England Accessories Trade Ass'n v. Browne*, 502 F.Supp. 1245 (D.Conn.1980); *Florida Businessmen for Free Enterprise v. Florida*, 499 F.Supp. 346 (N.D.Fla.1980).

Cases which have struck down the entire model act or modified versions thereof include: *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916 (6th Cir. 1980), *vacated and remanded*, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981); *Weiler v. Carpenter*, 507 F.Supp. 837 (D.N.M.1981); *Brache v. County of Westchester*, 507 F.Supp. 566 (S.D.N.Y.1981), *rev'd, Brache v. County of Westchester*, 658 F.2d 47 (2d Cir. 1981); *Franza v. Carey*, 518 F.Supp. 324 (S.D.N.Y.1981); *General Stores, Inc. v. City of Albuquerque*, No. 81–0027–M Civil (D.N.M. Mar. 23, 1981); *Lazy J., Ltd. v.*

*Borough of State College*, Civ. No. 80–1167 (M.D.Pa. Jan. 30, 1981); *Back Door Records v. City of Jacksonville*, 515 F.Supp. 857 (E.D. 1981); *The Town Tobacconist v. Degnan*, No. C–2198–80 (Super.Ct.N.J. Mar. 21, 1981); *Indiana Chapter (NORML) v. Sendak*, No. TH 75–142–C (S.D.Ind. Feb. 4, 1980). *See also Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 639 F.2d 373 (7th Cir. 1981), *cert. granted*, 452 U.S. 904, 101 S.Ct. 3028, 69 L.Ed.2d 404 (1981).

5. As originally enacted, Section 1 defined drug paraphernalia as materials "used, intended for use or *designed for use*" in connection with scheduled drugs. The legislature deleted the "designed for use" language by the September 28, 1981 amendment. *See* note 1 *ante.*

In *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), the Supreme Court articulated the basis for the vagueness doctrine:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. (Footnotes omitted).

A statute, therefore, must provide (1) fair notice of what is forbidden and (2) clear standards for enforcement. *Id.*

With a single exception, the Court concludes that the challenged language in the Maine statute is not impermissibly vague.

**1. "Intended for Use"**

Section 1 of the statute defines "drug paraphernalia" as anything that is "used *or intended for use*" in producing or consuming a scheduled drug in violation of Maine's controlled substance laws.[6] Plaintiffs raise two separate vagueness challenges to the phrase "intended for use." First, they argue that the phrase is impermissibly vague because the statute fails to indicate whose intent is relevant; it might, for example, permit the prosecution of an innocent *seller* of a multi-use item if the

*buyer* intends to use that item with a controlled substance.[7] This Court cannot accept plaintiffs' interpretation of the statutory language. A fair reading of the Act as a whole indicates that the relevant intent can only be that of the person charged with having violated the statute. *Accord, The Casbah, Inc. v. Thone*, 651 F.2d 551, 559 (8th Cir. 1981); *Hejira Corp. v. J.D. MacFarlane*, 660 F.2d 1356 at 1367 (10th Cir. 1981); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 928–29 (6th Cir. 1980), *vacated and remanded*, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981); *New England Accessories Trade Association v. City of Nashua*, Civ. No. 80–350–D (D.N.H. Dec. 8, 1980); *New England Accessories Trade Association v. Browne*, 502 F.Supp. 1245, 1251 (D.Conn.1980); *Tobacco Accessories and Novelty Craftsmen Merchants Association v. Treen*, 501 F.Supp. 168, 169–70 (E.D.La. 1980); *Mid-Atlantic Accessories Trade Association v. Maryland*, 500 F.Supp. 834, 844 (D.Md.1980); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289, 291–93 (D.Del.1980). *But see Weiler v. Carpenter*, 507 F.Supp. 837, 842–43 (D.N.M. 1981); *General Stores, Inc. v. City of Albuquerque*, No. 81–0027–M Civil, slip op. at 4 (D.N.M. Mar. 23, 1981); *The Town Tobacconist v. Degnan*, No. C–2198–80, slip op. at 6 (N.J.Super.Ct., Middlesex Co. Mar. 12, 1981); *Indiana Chapter (NORML) v. Sendak*, No. TH 75–142–C, slip op. at 14–15 (S.D.Ind. Feb. 4, 1980).

Plaintiffs' second contention is that the concept of "intent" is itself ambiguous; it might signify either mere awareness of a likelihood of the result, or a conscious desire for that result to occur. *See United States v. Bailey*, 444 U.S. 394, 404, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980). There is no substance to this argument. The Maine Drug Paraphernalia Act is a part of the Maine Criminal Code, 17–A M.R.S.A. Section 10 of the Code contains the following

---

**6.** The phrase "intended for use" also appears in Section 6 of the statute, which makes it unlawful to advertise objects "intended for use" as drug paraphernalia.

**7.** This argument has been characterized as one of "transferred intent." *See, e.g., The Casbah, Inc. v. Thone*, note 4 *supra*, 651 F.2d at 559; *Record Revolution No. 6, Inc. v. City of Parma*, note 4 *supra*, 638 F.2d at 928.

definition of "intentionally": "A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result." 17–A M.R.S.A. § 10(1)(A). Section 2 of the Code makes clear that the word "intentionally" and its variants, wherever used in the Code, have the meaning set forth in Section 10. 17–A M.R.S.A. § 2(15). Plainly, the concept of "intent" in the Maine Drug Paraphernalia Act is not, as plaintiffs contend, impermissibly vague.

### 2. Factors Relevant to Determining Drug Paraphernalia

■■ Plaintiffs next challenge the list of fourteen factors, set forth in Section 3(A)–(N) of the Act, which are to be considered by a court or other authority in determining whether an object is "drug paraphernalia." Plaintiffs argue that these enforcement guidelines are vague and may lead to discriminatory enforcement. In addition, they attack each of the factors individually and present numerous hypotheticals showing that no single factor will necessarily provide an objective basis for enforcement authorities to infer the intent of the seller.

This argument wholly misconstrues the nature of the list of factors. The more sensible interpretation of the statute makes clear that these criteria are not designed to constitute a precise definition of drug paraphernalia, nor is any factor alone to be dispositive. Rather, the statute merely lists factors that *may* be relevant in ascertaining whether an object is drug paraphernalia, and instructs that these factors should be considered along with "all other logically relevant factors" in making that determination. With the single exception discussed below, the listed factors all are logical and relevant guides in determining whether the specific intent exists to make an object

drug paraphernalia. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 560–61; *Hejira Corp. v. J.D. MacFarlane, supra,* at 1367–1368; *New England Accessories Trade Association v. Browne, supra,* 502 F.Supp. at 1251–52; *Mid-Atlantic Accessories Trade Association v. Maryland, supra,* 500 F.Supp. at 845–46; *Delaware Accessories Trade Association v. Gebelein, supra,* 497 F.Supp. at 291–92. *But see Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 933–34; *Weiler v. Carpenter, supra,* 507 F.Supp. at 843–44.

Section 3(F) of the Act is, however, entirely too vague to guide either those subject to the Act or those charged with its enforcement. This provision would require a court or other authority, in determining whether an object is "drug paraphernalia," to consider:

> [d]irect or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use as drug paraphernalia.

The Court is unable to discern the intended meaning of this language with any degree of certainty. It is impermissibly vague and must be severed.[8]

### 3. "Reasonably Should Know"

■ Plaintiffs' final vagueness argument attacks the standard of knowledge required for conviction under Sections 5 and 6 of the Act. Section 5 makes it unlawful for any person "to traffick in or furnish drug paraphernalia, knowing, *or under circumstances where one reasonably should know*, that it will be used . . ." with a scheduled drug.

---

**8.** The Maine legislature did not enact the severability provision of the Model Drug Paraphernalia Act because of the general severability provision, 1 M.R.S.A. § 71(8), of the Maine statutes. In *Town of Windham v. LaPointe,* 308 A.2d 286, 292 (Me.1973), the Maine court made clear that it is proper for a court to sever an unconstitutional portion of a statute "[w]here it appears that the valid provisions would have been enacted, even if the invalid portion had been deleted." There can be no doubt that the Maine legislature would have enacted the remaining provisions of the present statute without this invalid provision.

Section 6 makes it unlawful for any person to advertise drug paraphernalia "knowing, or *under circumstances where one reasonably should know,* . . ." that the purpose of the advertisement is to promote the sale of drug paraphernalia. Plaintiffs contend that the inclusion of a constructive knowledge standard ("reasonably should know") in Sections 5 and 6 introduces an unconstitutionally vague negligence standard, rather than a specific intent standard, into the statute.[9] The Court disagrees.

In rejecting plaintiffs' contention, the Court is aware that at least two other courts have found the "reasonably should know" standard of constructive knowledge to be unconstitutionally vague and have ordered this portion of the statute severed. *See Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 935–36; *New England Accessories Trade Association v. Browne, supra,* 502 F.Supp. at 1252–53. This Court is, however, persuaded by and adopts the reasoning of Judge Stapleton in *Delaware Accessories Trade Association v. Gebelein, supra,* 497 F.Supp. at 294:

> In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So-called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the sur-

rounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue.

As Judge Stapleton further noted, there are numerous federal criminal statutes which utilize a "reasonably should know" or similar standard[10] and which have withstood constitutional challenges. *Id. See, e.g., Gorin v. United States,* 312 U.S. 19, 27–28, 61 S.Ct. 429, 433, 434, 85 L.Ed. 488 (1941); *Selzman v. United States,* 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054 (1925); *United States v. Featherston,* 461 F.2d 1119, 1121–22 (5th Cir.), *cert. denied,* 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972).

This Court concludes that the "reasonably should know" standard of the Maine Act is not unconstitutionally vague and does not violate the Due Process Clause. The majority of the courts which have reviewed the Model Act also have upheld the "reasonably should know" standard. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 561; *New England Accessories Trade Association, Inc. v. City of Nashua, supra,* slip op. at 13; *Mid-Atlantic Accessories Trade Association v. Maryland, supra,* 500 F.Supp. at 845; *Florida Businessmen for Free Enterprise v. Florida, supra,* 499 F.Supp. at 353; *Delaware Accessories Trade Association v. Gebelein, supra,* 497 F.Supp. at 293–95; *World*

---

9. Plaintiffs do not contest that the actual knowledge requirement of Sections 5 and 6, when coupled with "used or intended for use" in the Section 1 definition of drug paraphernalia, does provide adequate notice to those covered by the Act. *See Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 934–35.

10. 8 U.S.C. § 1185(a)(2); 15 U.S.C. §§ 78dd–1, 78dd–2, 1397, 1916, 2068, 2614; 18 U.S.C. §§ 491, 922, 954, 1384, 2154, 2251, 2423, 2512; 26 U.S.C. § 999; 42 U.S.C. §§ 263j, 5409; 46 U.S.C. § 1461; 50 U.S.C. § 783.

*Imports, Inc. v. Woodbridge Township,* 493 F.Supp. 428, 433.[11]

## B.

### Mandatory Presumption

█ Plaintiffs contend that Section 1(K) of the Act is unconstitutional because it creates a mandatory presumption, in violation of the Due Process Clause, that any object listed therein is drug paraphernalia. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Again, plaintiffs misread the statute. This Court agrees with other courts which have considered the question that the listed items are exemplary only and are not presumed to be drug paraphernalia. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 560 n.10; *Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 932. *See also Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra,* 500 F.Supp. at 845.

## C.

### The First Amendment

█ Plaintiffs raise First Amendment objections to Section 6 of the Act, which prohibits advertising that promotes, in whole or in part, the sale of drug paraphernalia. Section 6 makes it unlawful

> for any person to place in any newspaper, magazine, handbill or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia.

Plaintiffs argue that Section 6 impermissibly curtails protected speech. The Court disagrees.

It is clear, as plaintiffs apparently concede, that Section 6 restricts only commer-

cial speech; it forbids only "advertisement[s]" promoting "the sale" of drug paraphernalia. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 563. *But see Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 937. Commercial speech which promotes unlawful activity is not afforded First Amendment protection. *Metromedia, Inc. v. City of San Diego,* —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). Since Section 6 criminalizes only advertisements which promote the sale of drug paraphernalia—conduct which Section 5 of the statute makes unlawful—it does not impinge upon plaintiffs' First Amendment right of free speech. *Accord, The Casbah, Inc. v. Thone, supra,* 651 F.2d at 563–64; *New England Accessories Trade Association v. City of Nashua, supra,* slip op. at 17; *Florida Businessmen for Free Enterprise v. Florida, supra,* 499 F.Supp. at 354; *World Imports, Inc. v. Woodbridge Township, supra,* 493 F.Supp. at 434. *See also Nova Records, Inc. v. Sendak,* 504 F.Supp. 938, 943–44 (S.D.Ind.1980); *Mid-Atlantic Accessories Trade Association v. Maryland, supra,* 500 F.Supp. at 850. *But see Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 935–37.

█ The Court also rejects plaintiffs' contention that the phrase "in whole or in part" in Section 6 may prohibit advertising concerning lawful activity. Plaintiffs argue that where drug paraphernalia is advertised along with lawful objects, the statute might be read to make unlawful that part of the advertisement relating to the innocent items. Plaintiffs' construction of the statute is strained. The more sensible interpretation is that where an advertise-

---

**11.** Plaintiffs' overbreadth argument is substantially the same as their vagueness argument. They contend that the Act does not adequately inform those covered by the Act of what it prohibits. The Court's determination that the statute is not impermissibly vague disposes of the overbreadth argument. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 561 n.14; *New England Accessories Trade Ass'n v. Browne, supra,* 502 F.Supp. at 1253–54; *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra,* 500 F.Supp. at 847.

ment promotes the sale of both drug paraphernalia and lawful objects, the statute forbids only that part of the advertisement relating to drug paraphernalia. So interpreted, the challenged statutory language does not curtail protected speech. *Accord, The Casbah, Inc. v. Thone, supra,* 651 F.2d at 564. *But see Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 937.

The Court concludes that the prohibition of advertising in Section 6 of the Maine statute does not violate plaintiffs' First Amendment right of free speech.[12]

## III

Plaintiffs' complaint asserts a plethora of additional constitutional challenges to the Maine Act: that the statute impermissibly burdens interstate commerce; impairs the obligation of contracts; impinges upon their right of privacy; violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment; violates the Fourth Amendment's prohibition of illegal searches and seizures; violates the Double Jeopardy Clause; and violates the Supremacy Clause. None of these contentions have been raised or pressed in written or oral argument. Other courts have fully addressed and rejected these arguments as being wholly without merit. *See, e.g., The Casbah, Inc. v. Thone, supra,* 651 F.2d at

561–62 (search and seizure); *New England Accessories Trade Association v. City of Nashua, supra,* slip op. at 16–17 (interstate commerce; equal protection); *New England Accessories Trade Association v. Browne, supra,* 502 F.Supp. at 1254–55 (substantive due process; interstate commerce); *Mid-Atlantic Accessories Trade Association v. Maryland, supra,* 500 F.Supp. at 847–50 (substantive due process; equal protection; interstate commerce; privacy; search and seizure); *Florida Businessmen for Free Enterprise v. Florida, supra,* 499 F.Supp. at 354 (equal protection; interstate commerce); *Delaware Accessories Trade Association v. Gebelein, supra,* 497 F.Supp. at 295–96 (substantive due process; equal protection; privacy; search and seizure; interstate commerce); *Record Revolution No. 6, Inc. v. City of Parma, supra,* 492 F.Supp. at 1179–80 (equal protection; interstate commerce). This Court also concludes that each is without merit.

## IV

The Court holds the Maine Drug Paraphernalia Act, 17–A M.R.S.A. § 1111–A, as here construed, to be constitutional and valid as against plaintiffs' challenges. The temporary restraining order is dissolved, and judgment will be entered dismissing the complaint, with prejudice and with costs.

IT IS SO ORDERED.

---

**12.** The Court does not reach plaintiffs' further contention that Section 6 impermissibly chills First Amendment freedoms because of "geographical overbreadth"—that is, because the advertising ban might be enforced against advertisements promoting the sale of drug paraphernalia in states where it is not illegal. *See Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). While there may be merit in this argument, *see Record Revolution No. 6, Inc. v. City of Parma, supra,* 638 F.2d at 936–37, this is not an appropriate case in which to consider the application of the statute to an advertisement informing of the availability of drug paraphernalia in another state. This is a facial overbreadth challenge to the statute. Section 6 could reasonably be construed by the Maine courts as prohibiting only advertisements promoting the sale of drug paraphernalia in Maine. The Supreme Court has observed that the overbreadth doctrine has limited application to commercial speech. *See Metromedia,*

*Inc. v. City of San Diego, supra,* —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 800; *Central Hudson Gas & Electric Corp. v. Public Service Commission, supra,* 447 U.S. at 564 n.6, 100 S.Ct. at 2350 n.6; *Bates v. State Bar of Arizona,* 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 2708, 53 L.Ed.2d 810 (1977). Moreover, the Supreme Court has recognized that invalidating a statute on the basis of facial overbreadth is "strong medicine," which should be employed "sparingly and only as a last resort"; and that "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Determination of plaintiffs' "geographical overbreadth" argument should await a case involving the attempted application of Section 6 to an advertisement promoting the sale of drug paraphernalia only in another state. *See The Casbah, Inc. v. Thone, supra,* 651 F.2d at 564, n.19.

## APPENDIX

An Act to Prohibit the Sale and Use of Drug Paraphernalia, 17–A M.R.S.A. § 1111–A, as originally enacted by P.L.1981, ch. 266, and subsequently amended by P.L.1981, ch. 531.

§ 1111–A. Sale and use of drug paraphernalia

1. As used in this section the term "drug paraphernalia" means all equipment, products and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a scheduled drug in violation of this chapter or Title 22, section 2383. It includes, but is not limited to:

A. Kits used or intended for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a scheduled drug or from which a scheduled drug can be derived;

B. Kits used or intended for use in manufacturing, compounding, converting, producing, processing or preparing scheduled drugs;

C. Isomerization devices used or intended for use in increasing the potency of any species of plant which is a scheduled drug;

D. Testing equipment used or intended for use in identifying or in analyzing the strength, effectiveness or purity of scheduled drugs;

E. Scales and balances used or intended for use in weighing or measuring scheduled drugs;

F. Dilutents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or intended for use in cutting scheduled drugs;

G. Separation gins and sifters, used or intended for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

H. Blenders, bowls, containers, spoons and mixing devices used or intended for use in compounding scheduled drugs;

I. Capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of scheduled drugs;

J. Containers and other objects used or intended for use in storing or concealing scheduled drugs; and

K. Objects used or intended for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body, such as:

(1) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;

(2) Water pipes;

(3) Carburetion tubes and devices;

(4) Smoking and carburetion masks;

(5) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette that has become too small or too short to be held in the hand;

(6) Miniature cocaine spoons and cocaine vials;

(7) Chamber pipes;

(8) Carburetor pipes;

(9) Electric pipes;

(10) Air-driven pipes;

(11) Chillums;

(12) Bongs; or

(13) Ice pipes or chillers.

2. For purposes of this section, drug paraphernalia does not include hypodermic apparatus. Possession of, furnishing or trafficking in hypodermic apparatus constitute separate offenses under sections 1110 and 1111.

3. In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

A. Statements by an owner or by anyone in control of the object concerning its use;

B. Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any scheduled drug;

C. The proximity of the object, in time and space, to a direct violation of this chapter;

D. The proximity of the object to scheduled drugs;

E. The existence of any residue of scheduled drugs on the object;

F. Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use as drug paraphernalia;

G. Instructions, oral or written, provided with the object concerning its use;

H. Descriptive materials accompanying the object which explain or depict its use;

I. National and local advertising concerning its use;

J. The manner in which the object is displayed for sale;

K. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

L. Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

M. The existence and scope of legitimate uses for the object in the community; and

N. Expert testimony concerning its use.

4. It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.

5. It is unlawful for any person to traffick in or furnish drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.

6. It is unlawful for any person to place in any newspaper, magazine, handbill or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia.

7. Violation of subsection 4 is a civil violation for which a forfeiture of not more than $200 may be adjudged.

8. Violation of subsection 5 or 6 is a Class E crime, except that, if the actor trafficks or furnishes drug paraphernalia to a child under 16 years of age, it is a Class D crime.

9. Any drug paraphernalia possessed in violation of this section is declared to be contraband and may be seized and confiscated by the State.